# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

ELIOT COHEN, PHILIP RICASATA and
CHARLES SHOEMAKER, on behalf of
themselves and all others similarly situated,

Plaintiffs,

v.

UBS FINANCIAL SERVICES, INC. and
UBS AG,

Defendants.

Case No. 1:12-CV-02147 -- KMW - JLC

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR RELIEF FROM ORDER GRANTING MOTION TO COMPEL ARBITRATION

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**

Jeffrey G. Smith (JS 2431)
Robert Abrams (RA 7559)
Matthew M. Guiney (MG 5858)
270 Madison Avenue
New York, NY 10016
Telephone:  (212) 545-4600
Facsimile:   (212) 545-4653

Francis M. Gregorek (144785)
Betsy C. Manifold (182450)
Rachele R. Rickert (190634)
750 B Street, Suite 2770
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile:  (619) 234-4599

Attorneys for the Plaintiffs

715704

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................................. ii

I.     INTRODUCTION ................................................................................................. 1

II.    SUMMARY OF ARGUMENT ............................................................................ 3

III.   ARGUMENT ........................................................................................................ 5

      A.     Plaintiffs' Request for Relief under Rules 54(b),
           60(b)(6) and 60(c)(1) is Appropriate and Timely ................................... 5

      B.     Class and Collective Action Waivers Violate FINRA Rules ................................ 7

           1.     FINRA is a Self Regulatory Organization Authorized By Congress ......... 7

           2.     Member Firms Must Adhere To FINRA Arbitration Rules ...................... 7

           3.     The *Schwab* Complaint ........................................................................... 9

           4.     The FINRA Panel Rules That a Class and/or
               Collective Action Waiver Violates FINRA Rules ................................... 10

      C.     The UBS Waiver is Void Under Section 29(a)
           of the Exchange Act Because it Violates FINRA Rules ...................................... 13

      D.     FINRA Rules Do Not Conflict With The FAA ................................................... 16

           1.     FINRA's Class Arbitration Rules are Consistent with the FAA .............. 16

           2.     FINRA Rules Encourage Individual Arbitration Without Impediment.... 16

      E.     UBS Cannot Ignore Its Arbitration Agreements With FINRA............................. 18

IV.    CONCLUSION...................................................................................................... 20

## TABLE OF AUTHORITIES

**CASES**                                                                                   **Page(s)**

*Abed v. John Thomas Financial, Inc.,*
2013 N.Y. Slip Op 04716 (App. Div., 1st Dep't June 20, 2013)...............................9, 19

*Accenture LLP v. Spreng,*
  647 F.3d 72 (2d Cir. 2011)...............................................................................6

*American Express v. Italian Colors Restaurant,*
  570 U.S. ___ (2013)......................................................................................2

*AT&T Mobility LLC v. Concepcion,*
  131 S. Ct. 1740 (2011).................................................................4, 16, 17, 20

*Charles Schwab & Co. v. FINRA,*
  861 F. Supp. 2d 1063 (N.D. Cal. May 11, 2012)...................................................7, 8

*Chase Bank USA, N.A. v. McCoy,*
  131 S. Ct. 871 (2011)...................................................................................6

*City of Arlington, Texas v. Federal Communications Commission,*
  133 S. Ct. 1863 (2013).................................................................................15

*Compucredit Corp. v Greenwood,*
  132 S. Ct. 665 (2012)..................................................................................13

*Credit Suisse v. Glen Billing,*
  551 U.S. 264 (2007)....................................................................................15

*D.H. Blair & Co. v. Gottdiener,*
  462 F.3d 95 (2d Cir. 2006)..............................................................................5

*Gomez v. Brill Securities, Inc.,*
  95 A.D.3d 32 (N.Y. App. Div. 1st Dep't 2012)......................................................8, 9

*Good v. Ameriprise,*
  No. 06-1027, 2007 U.S. Dist. LEXIS 9298 (D. Minn. Feb. 8, 2007)...........................9

*Green v. Beer,*
  No. 06 Civ. 4156, 2009 U.S. Dist. LEXIS 98285 (S.D.N.Y. Oct. 22, 2009)...............6

*Macquarie Holdings (USA) Inc. v. Song,*
  82 A.D.3d 566 (N.Y. App. Div. 1st Dep't 2011).....................................................19

*N.J. Carpenters Health Fund v. DLJ Mortgage Capital,*
  No. 08 Civ. 5653, 2013 U.S. Dist. LEXIS 12640
  (S.D.N.Y. Jan. 23, 2013)..................................................................................5

*Owen v. Bristol Care, Inc.,*
  702 F.3d 1050 (8th Cir. 2013) ....................................................................15

*Raniere v. Citigroup,*
  827 F. Supp. 2d 294 (S.D.N.Y. 2011)...........................................................2

*Shearson/American Express, Inc. v. McMahon,*
  482 U.S. 220 (1987)..........................................................................13, 14, 15

*Standard Investment Chartered, Inc. v. National Association of Securities Dealers, Inc.,*
  637 F.3d 112 (2d Cir. 2011)........................................................................11

*Sutherland v. Ernst & Young LLP,*
  847 F. Supp. 2d 528 (S.D.N.Y. 2012)............................................................2

*Torres v. United Healthcare Services, Inc.,*
  No. 12 CV 923, 2013 U.S. Dist. LEXIS 14200 (E.D.N.Y. Feb. 1, 2013) ..................15

*UBS v. West Virginia University Hospitals, Inc.,*
  660 F.3d 643 (2d Cir. 2011)..............................................................8, 19, 20

*Velez v. Perrin Holden & Davneport Capital Corp.,*
  769 F. Supp. 2d 445 (S.D.N.Y. 2011)............................................................9

*Wilko v. Swan,*
  346 U.S. 427 (1953)....................................................................................15

## STATUTES & RULES

Dodd Frank Wall Street Reform and Consumer Protection Act,
Pub. L No. 111-203, 124 Stat. 1376 .............................................................14

Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* ........................... *passim*

Federal Rules of Civil Procedure
  54(b)..........................................................................................................2, 5
  60(b).........................................................................................................5, 6
  60(b)(6) ..................................................................................................2, 5, 6
  60(c).............................................................................................................6
  60(c)(1) ....................................................................................................2, 5

FINRA Rules

0140.................................................................................................................9
2010.................................................................................................................8
2268....................................................................................................8, 9, 10
12000.............................................................................................................9, 10
12204...........................................................................................................10, 11
13000.............................................................................................................8, 9
13204.................................................................................................12, 13, 16, 17

Securities Exchange Act of 1934

15 U.S.C. § 78cc ("Section 29") ..................................................................... *passim*

# I.    **INTRODUCTION**

On May 3, 2012, UBS moved to compel arbitration in this case.  Dkt. No. 61.  Plaintiffs opposed on June 8, 2012, Dkt. No. 69, and UBS replied on June 29, 2012, Dkt. No. 78.  On December 4, 2012, Dkt. No. 90, Judge Barbara S. Jones granted UBS's motion and stayed the case (the "December 4 Order").

On February 21, 2013 a Hearing Panel of the Financial Industry Regulatory Authority ("FINRA" or  the "Panel") decided the case of *Department of Enforcement v. Charles Schwab & Company, Inc.* (the "Schwab Ruling").[1]  In a holding entitled to great deference from the courts because it was squarely within FINRA's scope of expertise, the Panel ruled that Schwab's class and collective action waiver in the arbitration clause of its customer agreement violated FINRA rules.  That holding directly contradicted Judge Jones' decision in this case that brushed aside the Plaintiffs' argument to that very same point and incorrectly held that UBS's class and collective action waiver in the arbitration clause of its employee agreements did not violate FINRA rules.

A consequence of Schwab Ruling that class and collective action waivers in pre-dispute arbitration agreements violate FINRA rules, is that the employment agreements between UBS and its financial advisors purporting to waive class and collective actions are void under 15 U.S.C. § 78cc (Section 29(a) of the Exchange Act).[2]

In opposing UBS's motion to compel arbitration, Plaintiffs argued, *inter alia*, that the class and collective action waiver in UBS's pre-dispute arbitration agreement with its financial

---

[1] *Dep't of Enforcement v. Charles Schwab & Co.*, 2013 FINRA Discip. LEXIS 14 (FINRA Feb. 21, 2013). A copy of this decision is attached to the Declaration of Robert Abrams ("Abrams Decl.") as Exhibit ("Ex.") A.

[2] "Any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of a self-regulatory organization, shall be void."

715704

advisors was unenforceable because it violated FINRA rules.[3] Plaintiffs argued that the FINRA

rule violation is not harmless because (a) FINRA rules have the force of law in the securities

industry and are the product of an overarching and specific plan by Congress to commit the

regulation of all facets of the securities industry, including those dictating employer-employee

relations, to a scheme developed by the SEC according to procedures set by Congress, and (b)

because securities industry employers such as UBS, and securities industry licensed participants,

such as the class members here, agree by contract with FINRA to abide by all FINRA rules

including those regulating the employment relationship and employment dispute resolution,

whether by arbitration or otherwise.  Plaintiffs note that their argument before Judge Jones was

directly in line with Section 29(a) of the Exchange Act which voids any contract that binds "any

person to waive compliance with . . .any rule of a self-regulatory organization."[4]

This motion to be relieved of the December 4 Order granting UBS's motion to compel

arbitration and stay this case is brought pursuant to Federal Rules of Civil Procedure 54(b),

60(b)(6) and 60(c)(1).[5]  It is based in part upon the Schwab Ruling.

---

[3] *See* Pls.' Opposition to Defs' Motion to Compel Arbitration and Stay this Action, III(A), Dkt. No. 69, June 8, 2012.

[4] Plaintiffs also argued that the UBS arbitration agreement was unenforceable because it 1) violated the National Labor Relations Act guarantee of the right of employees to join together in litigation; 2) violated the Fair Labor Standard Act's right of collective action; and 3) was unenforceable in this case because it prevented Plaintiffs from vindicating their statutory right to have their FLSA claim heard. In view of the recent Supreme Court decision rejecting the Second Circuit's vindication of statutory rights analysis, *see American Express v. Italian Colors Restaurant*, 570 U.S. ___ (2013), however, Plaintiffs in this case do not intend to press that vindication point. Since the Second Circuit is currently reviewing *Sutherland v. Ernst & Young LLP*, 847 F. Supp. 2d 528 (S.D.N.Y. 2012), and *Raniere v. Citigroup*, 827 F. Supp. 2d 294 (S.D.N.Y 2011), however, Plaintiffs reserve the right to raise the FLSA and NLRA arguments in this case should developments justify reconsideration.

[5] *See* III (A) below.

## II.     SUMMARY OF ARGUMENT

Class and collective action waivers in pre-dispute arbitration agreements between members of FINRA and their financial advisors violate FINRA rules. FINRA is a self-regulatory organization authorized by Congress to regulate the securities industry. Member firms of FINRA, whose very right to engage in the securities business depends upon their membership in FINRA, must adhere to FINRA arbitration rules. In the Schwab Ruling, the Panel agreed with the FINRA Department of Enforcement ("DOE") that the Schwab class and collective action waiver in its customer arbitration agreement violated FINRA rules. Nevertheless, in a non-sequitur and non-precedential holding, the Panel held that the Schwab waiver was enforceable under the Federal Arbitration Act ("FAA") (codified as 9 U.S.C. § 1, *et seq.*). [6]

There are two arbitration agreements at issue in this case: one is the agreement between FINRA and UBS,[7] the other between UBS and its financial advisors. These two agreements are fundamentally in conflict because the agreement between FINRA and UBS allows for class and collective action in court, but not in arbitration, while the agreement between UBS and its financial advisors forbids any class and collective actions. Under the very recently amended Section 29(a) of the Exchange Act, a waiver of compliance with a rule of a self-regulatory organization ("SRO") is void. Since the agreement between UBS and its financial advisors waives compliance with the FINRA rules regarding class and collective actions, it is void under the Exchange Act.

---

[6] That much of the Panel's holding regarding the FAA is not persuasive authority in this Court because it is wholly outside FINRA's expertise and, in any case, is wrong as shown below. *See, infra*, III (D) & (E) below.

[7] A copy of the UBS Employment Agreement's Arbitration Clause is attached as Abrams Decl. Ex. B.

The arbitration agreement between UBS and its financial advisors is also void under common law contract principles because it contains an internal contradiction that makes it hopelessly ambiguous. On the one hand it requires arbitration under the auspices and rules of FINRA. Those rules, of course, permit class and collective proceedings in court. On the other hand, the agreement explicitly prohibits participation by UBS advisors in such class and collective court actions.

The FAA, and Supreme Court cases interpreting the FAA, direct that private agreements regarding arbitration must be interpreted according to their terms as in any contract. Moreover, parties are free to agree to any arbitration agreement terms they so choose and such arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." FAA, 9 U.S.C. § 2; *see also AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1752 (2011).

In this case, FINRA's arbitration agreement with UBS must be given the same deference as any agreement regarding arbitration. Thus, the FAA gives force to the terms of the agreement between FINRA and UBS. To enforce the agreement between UBS and its financial advisors would be to invalidate the FINRA agreement with UBS concerning class and collective actions. Since FINRA's authority has been granted by Congress in a federal statute, the agreement between UBS and its financial advisors, to the extent it forbids class and collective actions, is not enforceable. The only proper result is to interpret or resolve the conflict in UBS's agreement with its employees to be consonant with the other agreements both parties make with FINRA and strike the waiver.

4

715704

## III.   **ARGUMENT**

### A.   **Plaintiffs' Request for Relief under Rules 54(b), 60(b)(6) and 60(c)(1) is Appropriate and Timely**

The December 4 Order granting UBS's motion to compel arbitration technically stayed this case, but it essentially closed the case except for the entry of judgment pursuant to an arbitration award.[8]  None of Plaintiffs' claims in their Amended Complaint will be considered by the court if the December 4 Order stands.  As a result, the December 4 Order was tantamount to a final order within the meaning of Rule 60(b).  At the same time, the December 4 Order, limited to UBS's motion to compel arbitration, "adjudicate[d] fewer than all the claims or the rights and liabilities of fewer than all the parties" within the meaning of Rule 54(b).  Thus, Rules 54(b) and 60(b) are either both or alternatively applicable to the present situation.

Under Rule 54(b), Plaintiffs may move to revise the December 4 Order "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Since no arbitration has been commenced and no arbitration award has been sought to be entered as a judgment, there has been no entry of judgment in this case, and Plaintiffs are entitled to bring this motion to revise the December 4 Order.

Courts may reconsider the orders entered in a case where "there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  *N.J. Carpenters Health Fund v. DLJ Mortgage Capital*, No. 08 civ. 5653, 2013 U.S. Dist. LEXIS 12640, at *11 (S.D.N.Y. Jan. 23, 2013) (citing *Official Committee of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir.

---

[8] *See, e.g., D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006)("[C]onfirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court. . ." and "[o]nly a barely colorable justification of the outcome reached by the arbitrators is necessary to confirm the award.") (internal quotations omitted).

715704

2003)).  Where there is a "clear conviction of error with respect to a point of law on which its previous decision was predicated," the Court should revise a previous decision. *Green v. Beer*, No. 06 civ. 4156, 2009 U.S. Dist. LEXIS 98285, at *6 (S.D.N.Y. Oct. 22, 2009) (citing *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981)).  In this case, the Schwab Ruling that a class and collective action waiver in a pre-dispute arbitration agreement violates FINRA rules constitutes new evidence or an intervening change in law – unavailable prior to the December 4 Order – demonstrating that Judge Jones' holding to the contrary was an error of law[9] and, if allowed to stand, would work a manifest injustice.

Under Rule 60(b), "the court may relieve a party or its legal representative from a final judgment, order or proceeding"[10] for certain enumerated reasons.  Since the December 4 Order is essentially a "final order," as discussed above, Plaintiffs may also bring this motion pursuant to Rule 60(b), and, more particularly, Rule 60(b)(6) for "any other reason that justifies relief."  In terms of timing, Rule 60(c) allows a "reasonable time" and, for the section of Rule 60 relevant here, "no more than a year after the entry of the judgment or order or the date of the proceeding." Since the December 4 Order was filed on December 4, 2012, this motion is timely under Rule 60.

---

[9] The FINRA Panel's Ruling on the applicability of FINRA Rules is entitled to the utmost deference. *See, e.g., Chase Bank USA, N.A. v. McCoy*, 131 S. Ct. 871 (2011) ("This Court defers to an agency's interpretation of its own regulation, advanced in a legal brief, unless that interpretation is 'plainly erroneous or inconsistent with the regulation'"), quoting *Auer v. Robbins*, 519 U.S. 452, 461, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997). The FINRA Hearing Panel is optimally situated to interpret its own rules and regulations and provide insight on what behavior constitutes a violation of its rules.

[10] "A final decision is one that 'ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment.'" *Accenture LLP v. Spreng*, 647 F.3d 72, 75 (2d Cir. 2011) (citing *Cap Gemini Ernst & Young v. Nackel*, 346 F.3d 360, 362 (2d Cir. 2003)).

### B.   Class and Collective Action Waivers Violate FINRA Rules

#### 1.   FINRA is a Self Regulatory Organization Authorized By Congress

FINRA is the largest independent regulator for all securities firms doing business in the United States.   FINRA oversees nearly 4,420 brokerage firms, 162,575 branch offices and 629,280 registered securities representatives.[11]   Its rule making process is approved by Congress and its rules are approved by the SEC.   FINRA regulates all of the parties to the arbitration clause at issue in this motion.

Congress granted extensive power to FINRA to regulate the functions of its members, their associates and their customers.   In fact, FINRA has extensive and detailed regulatory power, delegated from Congress through the SEC in the Securities Exchange Act of 1934 ("Exchange Act"), over broker-dealer firms registered pursuant to Section 15 of the Exchange Act and their registered associated persons.   The Exchange Act gives FINRA the power to propose rules for the conduct and governance of its regulatory functions, and also regulates those rules.   FINRA's rule making process includes presentation of rules and other proposals to the SEC for approval and review of comments from affected entities in the securities industry.   Its rules may be challenged through several administrative steps culminating in a final determination by a federal court of appeals.   *Charles Schwab & Co. v. FINRA*, 861 F. Supp. 2d 1063, 1065-66 (N.D. Cal. May 11, 2012).   FINRA rules, then, have the force of federal law.

#### 2.   Member Firms Must Adhere To FINRA Arbitration Rules

The relationship between FINRA and UBS is one of a regulator and a regulated entity. FINRA members regularly "certif[y] [and recertify their] agreement to abide by … FINRA

---

[11] FINRA, http://www.finra.org (last visited June 3, 2013).

Rules." 861 F. Supp. 2d at 1065. The Panel explained that "[i]n its application for membership and subsequent amendments to that application, Schwab agreed to abide by and adhere to FINRA's Rules." *Schwab Ruling*, 2013 FINRA Discip. LEXIS 14, at *21. FINRA Rule 0140 expressly states that "[t]he Rules shall apply to all members and persons associated with a member," and "courts have recognized that FINRA membership constitutes an agreement to adhere to FINRA's Rules." *Id.* (citing *In re American Express Financial Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011)). Moreover, "FINRA has the power to sanction members for noncompliance with securities laws and FINRA Rules, including imposition of fines, censure, and suspension or revocation of membership or registration." *Charles Schwab v. FINRA*, 861 F. Supp. 2d at 1065.

FINRA rules govern arbitration procedures for its members.[12]  *See, e.g.*, the "Customer Code" (FINRA Rule 12000, *et seq.*) and the "Industry Code" (FINRA Rule 13000, *et seq.*).[13] *See also UBS v. West Virginia University Hospitals, Inc.*, 660 F.3d 643, 648-49 (2d Cir. 2011) ("Upon joining FINRA, a member organization agrees to comply with FINRA's rules . . . As a FINRA member, therefore, UBS is bound to adhere to FINRA's rules and regulations, including its Code and relevant arbitration provisions contained therein.").[14]  Members are required to follow FINRA rules: it is "inconsistent with just and equitable principles of trade and a violation of Rule 2010[15] for a member or a person associated with a member to ... (a) fail to submit a

---

[12] A FINRA "member" is "any broker or dealer admitted to membership in FINRA." *Id.*

[13] FINRA Customer Rules apply to FINRA members relationships with their customers. FINRA Industry Rules apply to FINRA members and their employees. FINRA's Rules are available at http://www.finra.org/Rules.

[14] *See also Gomez v. Brill Sec., Inc.*, 95 A.D.3d 32, 37 (1st Dep't 2012) ("the agreement between the parties makes it exceedingly clear that arbitration shall be governed by the rules promulgated by FINRA....").

[15] Rule 2010 says: "A member, in the conduct of its business, shall observe high standards of commercial honor and just and equitable principles of trade."

dispute for arbitration under the Code *as required by the Code* …." FINRA Rule 12000(a), 13000(a) (emphasis added). These rules "apply to all members and persons associated with a member." FINRA Rule 0140.[16]

### 3.     The *Schwab* Complaint

In a case where the regulatory language was identical to that at issue here, the FINRA Department of Enforcement ("DOE") brought an action against Charles Schwab & Company, Inc. ("*Schwab*" and the "*Schwab* Complaint")[17] on February 1, 2012 for including just such a class and collective action waiver in its customer agreements. The *Schwab* Complaint dealt with customer agreements while this case deals with industry agreements, but that is a distinction without a difference.[18]

In particular, DOE argued that Schwab's class action waiver violated FINRA Rules 2268(d)(3) and 2268(d)(1). *Schwab* Complaint at 1-2. FINRA Rule 2268(d)(3) "prohibits member firms from placing 'any condition' in a pre-dispute arbitration agreement that 'limits the ability of a party to file any claim in court permitted to be filed in court under the rules of the

---

[16] In the present case, UBS is the "member" while Plaintiffs are "associates" of UBS. FINRA Rule 13100(r)(1).

[17] Complaint filed in *Dep't of Enforcement v. Charles Schwab & Co., Inc.*, Disciplinary Proceeding No. 2011029760201 (Feb. 1, 2012). Abrams Decl. Ex. C.

[18] *See, e.g.*, analysis of industry agreements in *Abed v. John Thomas Fin., Inc.*, 2013 NY Slip Op 04716 (App. Div., 1st Dep't June 20, 2013) (reversed order to compel arbitration and stay class action because FINRA rules forbid class action arbitrations and permit class actions in court); *Gomez*, 95 A.D.3d 32 (arbitration of class action claims alleging failure to pay required overtime wages due to securities brokers barred because "the agreement between the parties makes it exceedingly clear that arbitration shall be governed by the rules promulgated by FINRA [. . . and] FINRA Manual Rule 13204(d) prohibits arbitration of class action claims. [. . .] Accordingly, based on the parties' own agreement, which incorporates by reference FINRA Manual Rule 13204(d), *arbitration of this class action suit is barred.*" (Emphasis added); *Velez v. Perrin Holden & Davenport Capital Corp.*, 769 F. Supp. 2d 445, 446-47 (S.D.N.Y. 2011) (because "FINRA Rule 13204 prohibits arbitration of class action claims [. . .] [i]t is thus uncontested that Velez's state law claims—which plaintiff has asserted as a class action pursuant to Fed. R. Civ. P. 23—*are ineligible for arbitration.*") (emphasis added); *Good v. Ameriprise*, No. 06-1027, 2007 U.S. Dist. LEXIS 9298 (D. Minn. Feb. 8, 2007) (motion to compel arbitration in wage dispute brought by financial advisors denied on grounds of NASD Rule 10301(d)(3), predecessor to FINRA Rule 13204).

forums in which a claim may be filed under the agreement.'" *Schwab* Complaint at 2. FINRA Rule 2268(d)(1) "prohibit[s] member firms from placing 'any condition' in a pre-dispute arbitration agreement that 'limits or contradicts the rules of any self-regulatory organization.'" *Schwab* Complaint at 2.   Those are precisely the issues here as the Industry rules contain identical language.

The *Schwab* Complaint explains that "[t]he FINRA Code of Arbitration Procedure makes clear that class actions [in court] are permitted under the rules of FINRA arbitration." *Schwab* Complaint at 4.   In support, the *Schwab* Complaint cites FINRA Rule 12204 which "states that class action claims may not be arbitrated under the Code, sets out a process for determining disputes as to whether a particular matter is part of a class action, and prohibits member firms and associated persons from enforcing arbitration agreements with respect to claims that are the subject of a certified or putative class action until certain events have occurred." *Id.* at 4-5. Additionally, the *Schwab* Complaint cites FINRA Rule 12204(d) which "provides that a firm may not enforce an arbitration agreement 'against a member of a certified or putative class action' until class certification is denied, the class is decertified, the member of the certified or putative class is excluded from the class, or the member of the certified or putative class elects not to participate or withdraws from the class." *Id.* at 5.   Those Rules in the Customer Code are also found in the Industry Code as shown below. *See, infra*, III(D).

### 4.    The FINRA Panel Rules That a Class and/or Collective Action Waiver Violates FINRA Rules

On February 21, 2013, the Panel agreed with the FINRA DOE that a class and/or collective action waiver in a pre-dispute arbitration agreement involving a FINRA customer violates FINRA rules:

> The first two causes of action in this disciplinary proceeding against Respondent, Charles Schwab & Company, Inc., charge that

10

new provisions in Respondent's customer agreements by which a customer waives any ability to assert a claim by means of a judicial class action conflict with and violate FINRA Rules 2268(d)(1) and (d)(3) and NASD Rules 3110(f)(4)(A) and (4)(C).   These Rules operate to preserve judicial class actions as an alternative to arbitration, even when there is a pre-dispute arbitration agreement between a FINRA member firm and its customer.   The Hearing Panel concludes that Respondent's new language does conflict with and violate these Rules.[19]

The Panel also concluded that "[t]he elimination of judicial class action conflicts with FINRA Rules that are designed to preserve the option of pursuing customer claims in judicial class actions in preference to arbitration."   Schwab Ruling, 2013 FINRA Discp. LEXIS 14, at **14-15.

The Panel also explained the long history – going back to 1992[20] – of the FINRA Rules forbidding class action arbitrations and "providing that class actions may not be arbitrated and that members may not move to compel arbitration of any claim included in a judicial class action unless and until the claim is removed from the class action."   Schwab Ruling, 2013 FINRA Discip. LEXIS 14, **26-27.   At that time, in response to comments on the proposed amendments, NASD declared that "'the bar on class actions in arbitration was designed to provide investors with access to the courts, which already have developed the procedures and the expertise for managing class action.'"   *Id.* at *27 (quoting SEC *Approving Release for Amendments to NASD Code of Arbitration Procedures and Rules of Fair Practice*, Exchange Act

---

[19] Schwab Ruling 2013 FINRA Discip. LEXIS 14, at *1; *see also Proposed Rule Change by National Association of Securities Dealers, Inc., Relating to Improvements in the NASD Code of Arbitration Procedure*, 57 Fed. Reg. 30519, 30520 (July 9, 1992).

[20] In 1992, the National Association of Securities Dealers (NASD), in part, filled the role currently held by FINRA as a self-regulatory organization overseeing aspects of the securities industry.   As a FINRA precursor, NASD's statutory framework and rule development are still applicable to FINRA.   *See Std. Inv. Chartered, Inc. v. NASD*, 637 F.3d 112, 114 (2d Cir. 2011).

715704

Rel. No. 31371, 1992 SEC LEXIS 2767, at **5-6, 57 Fed. Reg. 42659 (Oct. 28, 1992)).  In

adopting those amendments, the SEC said that it "'agrees with the NASD's position that, in all

cases, class actions are better handled by the courts and that investors should have access to the

courts to resolve class actions efficiently'" and that "'investor access to the courts should be

preserved for class actions . . . .'"  *Id.* (quoting Exchange Act Rel. No. 31371 at **8-9).

FINRA's preference for courts handling class and collective actions applies to member

employment agreements as well as to customer agreements.  As recently as December 2011,

FINRA filed a rule change with the SEC updating FINRA Rule 13204 of the Code of Arbitration

Procedure for Industry disputes to close a loophole and "to preclude *collective* actions by

employees of FINRA members under the [FLSA], [ADEA], or the [EPA] from being arbitrated

under the Industry Code."  *Order Approving Proposed FINRA Rule Change Relating to Class

Action Arbitration*, 77 Fed. Reg. 22,374 (April 13, 2012).[21]  The rule change was specifically in

response to two Southern District of New York rulings finding that FLSA collective actions were

not class actions for the purposes of the former FINRA Rule 13204. *Id.* Addressing the two

decisions, FINRA proposed the current Rule 13204 to preclude collective actions (in particular,

claims arising from the FLSA, ADEA, or EPA) from FINRA's arbitration forum. *Id.*  The rule

change was approved and became effective July 9, 2012. *SEC Approves Amendments to FINRA

Rule 13204 to Preclude Collective Action Claim from Arbitration under the Code*, FINRA

Regulatory Notice 12-28 (June 2012).[22]  As FINRA Rule 13204 currently stands it states in

relevant part, "Collective action claims under the Fair Labor Standards Act, the Age

---

[21] Abrams Decl. Ex. D.

[22] Abrams Decl. Ex. E.

Discrimination in Employment Act, or the Equal Pay Act of 1963 may not be arbitrated under the Code." FINRA Rule 13204(b)(1).

### C. The UBS Waiver is Void Under Section 29(a) of the Exchange Act Because it Violates FINRA Rules

Under Section 29(a) of the Exchange Act, 15 U.S.C. § 78cc(a),

> Any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of a self-regulatory organization shall be void.

By ruling that the UBS waiver of class and collective actions violated FINRA rules, the Panel essentially held that the UBS waiver was void. That is, the Panel held that the UBS waiver constituted a "waive[r] [of] compliance" with a "rule of a self-regulatory organization" and Section 29 says that any such waiver of compliance is void.[23]

The current and clear language of Section 29 has been a part of the Exchange Act since 2010 when the Dodd Frank Act made a slight change to the original wording enacted in 1934, substituting the phrase "self-regulatory organization" for "an exchange."[24]  In other words, as late as 2010, Congress reaffirmed that any attempt to waive compliance with any rule of an SRO was void.  That reaffirmation confirms Congressional intent with respect to the securities industry to hold void any attempt to waive compliance with any rule of an SRO.[25] As applied to

---

[23] That the Panel incorrectly held that the Schwab waiver was enforceable, does not alter that the Panel held that the Schwab waiver constituted a waiver of compliance with one of its rules.  The Panel's holding regarding the Schwab waiver, then, can be expressed as "enforceable under the FAA though void under the Exchange Act," a clear non sequitur as well as outside the Panel's area of expertise.

[24] Dodd Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203 § 927, 124 Stat. 1376, 1852 (2010).

[25] *See, e.g., Compucredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012) (liberal federal policy favoring arbitration unless FAA "'overridden by a contrary Congressional command.'"), quoting *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987).

13

the present case, Section 29(a) confirms that the UBS waiver of the FINRA rule regarding the right of member employees to bring class and collective actions in a court proceeding is void.

The only Supreme Court case dealing with a somewhat related issue is *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220 (1987). In that case, the Supreme Court held that an arbitration clause in an agreement between Shearson and one of its customers calling exclusively for arbitration of disputes under SEC regulations did not implicate Section 29(a) even though the plaintiff argued that it constituted a waiver of Section 27 which confers "exclusive jurisdiction of violations of this title [15 U.S.C.S. §§ 78aa, *et seq.*] or the rules and regulations thereunder…" on the district courts of the United States. *Id.* at 228.

Unlike the present case, the arbitration agreement in *Shearson* did not involve a waiver of compliance with any exchange or SRO rule. Rather the agreement complied with the NASD rules then in force and, therefore, did not violate Section 29. The SEC and its exchanges – predecessors to FINRA – encouraged arbitration in 1987, when *Shearson* was decided – as FINRA does today – and, therefore, the Shearson arbitration agreement did not waive compliance with the rules of any exchange. For that reason, the Shearson arbitration agreement was not void under Section 29.

By contrast, the present case involves a term of employment that imposes an explicit waiver of a FINRA rule. The *Shearson* opinion, therefore, supports the present argument that the UBS waiver of class and collective action – a violation of FINRA rules – constitutes a waiver of compliance with an SRO rule in violation of Section 29 and, therefore, is void.

The *Shearson* Court explained that "[s]ince the 1975 amendment to § 19 of the Exchange Act … the Commission [SEC] has had expansive power to ensure the adequacy of the arbitration

14

procedures employed by the SROs."[26] *Id.* at 233.  In other words, the SEC and its SROs (then exchanges) had been given the power to monitor arbitration agreements within the securities business and assure their compliance with the Exchange Act, nullifying any earlier concerns that arbitration violated the Exchange Act.[27]

It is, thus, evident that the FINRA Panel correctly held that Schwab's class and collective action waiver violated FINRA's rules.  Nonetheless, the Panel incorrectly concluded that the waiver was enforceable under the FAA and Supreme Court precedent.[28] The Panel erred because it incorrectly perceived a conflict between FINRA and the FAA that does not exist.[29]  The Panel was also wrong because it failed to consider all of the relevant agreements between FINRA and Schwab and between Schwab and its customers.  The issue in the present case is not whether the FINRA rule conflicts with the FAA; it does not.  It is, at least in significant part, *whether an*

---

[26] "The self-regulatory organizations must exercise governmental-type powers if they are to carry out their responsibilities under the Exchange Act." *Shearson*, 482 U.S. at 235.

[27] *See e.g. Wilko v. Swan*, 346 U.S. 427, 438 (1953) (finding that the Securities Exchange Act and the Federal Arbitration Act had irreconcilable policies in 1953, which is no longer the case since *Shearson*, 482 U.S. 220, in light of subsequent changes in the rules promulgated by the SEC and NASD (now FINRA)).

[28] The Panel's analysis of the impact of the FAA in this situation is not persuasive authority and is not entitled to deference by this Court. The question is "whether the agency has stayed within the bounds of its statutory authority." *City of Arlington, Texas v. Fed. Commc'ns. Comm'n.*, Nos. 11-545 and 11-547, 2013 U.S. LEXIS 3838 at *12 (Sup. Ct. May 20, 2013). *Cf. Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1054 (8th Cir. 2013) (commenting on the National Labor Relations Board holding in *D.R. Horton*, 357 N.L.R.B. No. 184 (Jan. 3, 2012), that the National Labor Relations Act makes a class and collective action waiver in an employment agreement unenforceable: "The Board's construction of the [NLRA] 'is entitled to considerable deference and must be upheld if it is reasonable and consistent with the policies of the Act,' . . . [but] the Board has no special competence or experience in interpreting the Federal Arbitration Act." (quoting *St. John's Mercy Health Sys. v. NLRB*, 436 F.3d 843, 846 (8th Cir. 2006)); *Torres v. United Healthcare Servs., Inc.*, No. 12 cv 923, 2013 U.S. Dist. LEXIS 14200, at *24 (E.D.N.Y. Feb. 1, 2013) ("The NLRB's interpretation of the FAA (or other statutes outside its expertise) is not entitled to any particular deference by this Court") (internal citations omitted).

[29] Even if the conflict did exist, plaintiffs would argue that it should be resolved in favor of the FINRA rules since they are part of an overarching, comprehensive, and detailed regulatory scheme Congress has explicitly created for the securities industry. *See Credit Suisse v. Glen Billing*, 551 U.S. 264 (2007) (securities law preempts antitrust law); *also, compare Wilko*, 346 U.S. 427 (finding the securities regulatory scheme in 1953 and its arbitration provisions inadequate to protect statutory rights and thus incompatible with the FAA) with *Shearson*, 482 U.S. 220 (finding the revised securities regulatory scheme and its arbitration provisions adequate to protect rights under the Exchange Act and thus compatible with the FAA).

715704

*arbitration agreement between a self regulatory agency and its members should be treated as any other private agreement under the FAA and enforced according to it terms.*

**D.    FINRA Rules Do Not Conflict With The FAA**

### 1.    FINRA's Class Arbitration Rules are Consistent with the FAA

Absent a private agreement to the contrary, the FAA does not permit class arbitration. Under FINRA Rule 13204(a), "class action claims may not be arbitrated under the [Industry] Code." Similarly, under FINRA Rule 13204(b), collective action claims under the FLSA may not be arbitrated. Thus, under FINRA rules, only individual claims may be arbitrated under the FAA. These rules are completely consistent with the Supreme Court's teaching in *Concepcion*: "Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." 131 S. Ct. 1740, 1748 (quoted in 2013 FINRA Discip. LEXIS 14, at *73).

### 2.    FINRA Rules Encourage Individual Arbitration Without Impediment

FINRA Rules require arbitration of individual claims of any party as long as neither party is a willing participant in a class or collective action covering the individual claim. *See* FINRA Rules 13204 (a)(2)(A)(B)[30] and 13204 (b)(2).[31] Thus, a financial advisor may bring an

---

[30] 13204(a)(2) Any claim that is based upon the same facts and law, and involves the same defendants as in a court-certified class action or a putative class action, or that is ordered by a court for class-wide arbitration at a forum not sponsored by a self-regulatory organization, shall not be arbitrated under the Code, unless the party bringing the claim files with FINRA one of the following:

(A) a copy of a notice filed with the court in which the class action is pending that the party will not participate in the class action or in any recovery that may result from the class action, or has withdrawn from the class according to any conditions set by the court; or

(B) a notice that the party will not participate in the class action or in any recovery that may result from the class action.

[31] 13204(b)(2) Any claim that involves plaintiffs who are similarly-situated against the same defendants as in a court-certified collective action or a putative collective action, or that is ordered by a court for collective action at a (continued...)

715704

individual claim in arbitration even if another financial advisor in the same firm has already brought a class or collective action in court for the same claim. This FINRA Rule, therefore, does not preclude arbitration for any individual who wants to bring an individual arbitration claim rather than participate in a class or collective action, and, thus, is not inconsistent with the FAA.

FINRA Rules 13204(a)(2) and 13204(b)(2) follow logically from FINRA Rules 13204(a)(1) and 13204(b)(1) which forbid class or collective arbitration, respectively, consistent with the FAA and *Concepcion*. Thus, these FINRA Rules say that if a class or collective action is brought in court, it may not then be brought into arbitration as a class or collective action. At the same time, as shown above, the existence of either a class or collective action in court in no way interferes with the right of any associate to bring an action in arbitration against a member.

What is really at issue in this case is UBS's power to prevent its employees from bringing, or participating in, class or collective actions in court by means of a class and collective action waiver in its pre-dispute arbitration agreement. The reason for such a waiver is clear: UBS seeks to preclude all class or collective actions by its employees against it either in court or in arbitration contrary to FINRA Rules it agreed to follow.

FINRA has precluded class action arbitrations, but has decided that its members may not preclude class and collective actions in court by means of a class and collective action waiver and that any such waiver is a violation of FINRA rules. FINRA's submission to the SEC regarding the new rule 13204(b) forbidding collective arbitration explained that the proposed

---

(…continued)

forum not sponsored by a self-regulatory organization, shall not be arbitrated under the Code, if the party bringing the claim has opted-in to the collective action.

715704

rule "clarifies that the existence of a certified or putative collective action nullifies any pre-dispute arbitration agreements"[32] because "FINRA believes access to courts for class or collective action litigation should be preserved for associated persons, and the proposal accomplishes this goal."[33] Section 29(a) of the Exchange Act, which voids any contract in violation of FINRA's rules, fully supports enforcement of these rules but, in any event, there are no such prohibitions relating to individual arbitration, as discussed above.

Thus, again, the real legal issue in this case is whether UBS has the right to preclude its financial advisors from participating in class and collective actions in court when FINRA has ruled, in the exercise of Congressionally delegated powers, that such restrictions violate FINRA rules. However, the important point here is that there is no issue relating to the FAA. FINRA has not attempted to interfere in any way with the FAA, as shown above. In fact, its rules enable the FAA in securities law and are completely consistent with the FAA as interpreted by the Supreme Court. Rather, what is at issue is UBS's purported right to ignore laws it has agreed to follow, both as a matter of its licensure and of its private arbitration agreement with FINRA.

### E.   UBS Cannot Ignore Its Arbitration Agreements With FINRA

When the issue is, thus, stated correctly, it becomes clear that FINRA and its members have entered into agreements to abide by the rules determined by FINRA under its Congressional mandate to set rules for the securities industry. UBS's membership in FINRA is an agreement regarding arbitration like any other agreement regarding arbitration. The FAA and the Supreme Court precedents on this issue also include the admonition that arbitration agreements are

---

[32] FINRA Regulatory Notice 12-28. Abrams Decl. Ex. E.

[33] *Order Approving Proposed FINRA Rule Change Relating to Class Action Arbitration*, 77 Fed. Reg. 22,374 n.3 (April 13, 2012). Abrams Decl. Ex. D.

715704

contracts that must be carefully interpreted according to their terms. *See, e.g., UBS*, 660 F.3d at 649. Moreover, as shown above, membership in FINRA – a prerequisite to doing securities business in the United States – requires that members follow FINRA rules, which they also agree to do. Thus, when UBS or any other FINRA member drafts arbitration agreements involving FINRA regulated arbitration, any construction of such agreements that would preclude class and collective court action, a clear violation of FINRA rules, would render the agreements void.[34]

Even if the terms of a FINRA member's arbitration agreement with its employees were merely ambiguous, they would have to be interpreted against the drafter. *Macquarie Holdings (USA) Inc., v. Song*, 82 A.D.3d 566 (NY App. Div. 1st Dep't 2011). In particular, the UBS arbitration agreement with its employees says that any arbitration shall be brought under the auspices and rules of FINRA, and at the same time, in violation of FINRA rules, forbids an employee from participating in a class or collective action. Without further explanation, a contract with such an internal contradiction cannot be given effect. *See Abed*, 2013 N.Y. Slip Op 04716 at 2 ("[A] party cannot agree to arbitrate 'under the auspices of FINRA' without agreeing to abide by FINRA's rules...."). The arbitration agreement should be resolved consistently with the other relevant contract, *i.e.*, the FINRA-UBS agreement, as a guide.

Moreover, if, as Judge Jones concluded in the December 4 Order, the UBS private arbitration agreement with its employees, which provides for its being governed by FINRA rules, must be enforced according only to *its* terms as she read them, then FINRA's rules *against* enforcement of the pre-dispute class waiver would be read out of those private contracts between

---

[34] *See Abed*, 2013 N.Y. Slip Op 04716 at 2 ("[A] party cannot agree to arbitrate 'under the auspices of FINRA' without agreeing to abide by FINRA's arbitration rules and the limits therein, at least not in the absence of an express agreement stating otherwise.").

715704

FINRA and UBS.  Since that conclusion is untenable, the only correct conclusion is that the UBS

class and collective action waivers are unenforceable since they conflict internally as well as

with their agreement with FINRA and are, therefore, void.

> In support of this argument, the Second Circuit has held that:

>> As a FINRA member, therefore, UBS is bound to adhere to FINRA's rules and regulations, including its Code and relevant arbitration provisions contained therein.  With respect to these provisions, the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989); *see also Bensadoun v. Jobe-Riat*, 316 F.3d 171, 176 (2d Cir. 2003) (FINRA Rules must be interpreted in accordance with principles of contract interpretation).

*UBS*, 660 F.3d at 649.

> In other words, even absent the Section 29 argument presented here, FINRA and UBS

entered into a private arbitration agreement.  Moreover, it is just the sort of privately negotiated

agreement to arbitrate that the FAA and the Supreme Court direct must be enforced like other

contracts, in accordance with their terms.  *See also Concepcion*, 131 S. Ct. at 1752 ("arbitration

is a matter of contract").

## IV.   CONCLUSION

> For the reasons enumerated above, Plaintiffs respectfully request that this Court deny

UBS's motion to compel arbitration that had been granted by the December 4 Order.

Dated: July 3, 2013

\_\_\_\_\_/s/ Jeffrey G. Smith\_\_\_\_\_
Jeffrey G. Smith (JS 2431)
Robert Abrams (RA 7559)
Matthew M. Guiney (MG 5858)
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
270 Madison Avenue

715704

New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 545-4653

Francis M. Gregorek (144785)
Betsy C. Manifold (182450)
Rachele R. Rickert (190634)
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
750 B Street, Suite 2770
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599

*Attorneys for the Plaintiff*

21