## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ELIOT COHEN, CHARLES SHOEMAKER, and PHILIP RICASATA, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | |
| v. | Case No. 1:12-cv-02147 (BSJ) (JLC) |
| UBS FINANCIAL SERVICES INC. and UBS AG, | |
| Defendants. | |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR RELIEF FROM ORDER GRANTING MOTION TO COMPEL ARBITRATION

Andrew J. Schaffran
Sam S. Shaulson
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
212-309-6000 (tel)
212-309-6001 (fax)

*Counsel for Defendants*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................. 1

II.   ARGUMENT ................................................................................................... 6

    A.    Plaintiffs' Motion Should Be Denied Because It Is Untimely Under Local Rule 6.3 And Procedurally Defective Under FRCP Rules 54(b) and 60(b). ......... 6

    B.    The Law Of The Case Is That Enforcement of Plaintiffs' Arbitration Agreements Would Not Be Inconsistent With FINRA's Rules............................ 8

    C.    Even If Plaintiffs' Arbitration Agreements Were Inconsistent With FINRA's Rules, The FAA Trumps FINRA's Rules And Mandates That Plaintiffs' Arbitration Agreements Be Enforced According To Their Terms. ..................................................................................................... 12

    D.    The Schwab Hearing Panel's Interim Conclusion That Schwab Violated FINRA Rules 2268(d)(1) and (d)(3) Of Its Customer Code Is Neither Controlling Law Nor Entitled To Deference In This Case. ................................ 18

    E.    UBS's Membership With FINRA Does Not Constitute A Separate Arbitration Agreement And Is In Any Event Irrelevant. .................................... 23

III.  CONCLUSION .............................................................................................. 25

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Abed v. John Thomas Fin., Inc.,
    2013 WL 3064624 (N.Y. App. Div. 1st Dep't June 20, 2013)................................20

American Express Co. v. Italian Colors Restaurant,
    133 S.Ct. 2304 (2013)................................................................................13, 16

Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dept. of Environmental Protection,
    208 F.3d 1 (1st Cir. 2000)........................................................................23

AT&T Mobility v. Concepcion,
    131 S. Ct. 1740 (2011)..............................................................................12

Bowen v. Georgetown Univ. Hosp.,
    488 U.S. 204 (1988)................................................................................12

Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,
    467 U.S. 837 (1984)................................................................................23

City of Austin Police Retirement Sys. v. Kinross Gold Corp.,
    2013 WL 2449188 (S.D.N.Y. June 6, 2013) .......................................................15

Cohen v. Bovino,
    2007 N.Y. Misc. LEXIS 8801 (N.Y. Sup. Ct. 2007)........................................11, 4

Compucredit Corp. v. Greenwood,
    132 S. Ct. 665 (2012)........................................................................13, 16, 17

Creative Sec. Corp. v. Bear Stearns & Co.,
    671 F. Supp. 961 (S.D.N.Y. 1987); aff'd, 847 F.2d 834 (2d Cir. 1988)................................11

DDR Constr. Servs., Inc. v. Siemens Indus., Inc.,
    2012 WL 4711677 (S.D.N.Y. Sept. 26, 2012)........................................................6

Desiderio v. N.A.S.D.,
    191 F.3d 198 (2d Cir. 1991)........................................................................23

Doe v. Karadzic,
    1999 WL 6360 (S.D.N.Y. Jan. 7, 1999) ...............................................................6

Gilmer v. Interstate/Johnson Lane Corp.,
    500 U.S. 20 (1991)................................................................................13

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Gomez v. Brill Securities, Inc.,
    95 A.D.3d 32 (1st Dep't 2012) ...................................................................................20

Good v. Ameriprise,
    2007 WL 628196 (D. Minn. Feb. 8, 2007) ................................................................20

Johnson v. Askin Capital Mgmt., L.P.,
    202 F.R.D. 112 (S.D.N.Y. 2001) ..................................................................................7

Landgraf v. USI Film Prods.,
    511 U.S. 244 (1994)....................................................................................................12

Marrero Pichardo v. Ashcroft,
    374 F.3d 46 (2d Cir. 2004)............................................................................................8

Mastrobuono v. Shearson Lehman Hutton, Inc.,
    514 U.S. 52 (1995).......................................................................................................13

McNeil v. Nat'l Football League,
    777 F. Supp. 1475 (D. Minn. 1991) ..............................................................................7

Morgan Keegan & Co., Inc. v. Drzayick,
    2011 WL 5403031 (D. Idaho Nov. 8, 2011)...............................................................22

Morgan Keegan & Co., Inc. v. Johnson,
    2011 WL 7789796 (E.D. Va. Dec. 22, 2011) .............................................................22

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,
    460 U.S. 1 (1983).........................................................................................................13

Perpetual Secs., Inc. v. Tang,
    290 F.3d 132 (2d Cir. 2002).........................................................................................22

Preston v. Ferrer,
    552 U.S. 346 (2008)..................................................................................................4, 15

ResQNet.com, Inc. v. Lansa, Inc.,
    2005 WL 2241524 (S.D.N.Y. Sept. 15, 2005);
    aff'd in part, rev'd in part on other grounds, 594 F.3d 860 (Fed. Cir. 2010)..............7

Rispler v. Sol Spitz Co., Inc.,
    2006 WL 3335056 (E.D.N.Y. Oct. 18, 2006)...............................................................6

Rodriguez de Quijas v. Shearson/American Express, Inc.,
    490 U.S. 477 (1989)................................................................................................15, 16

## TABLE OF AUTHORITIES
(continued)

Page(s)

Roney & Co. v. Goren,
     875 F.2d 1218 (6th Cir. 1989) ........................................................................15, 16

Ruotolo v. City of New York,
     514 F.3d 184 (2d Cir. 2008).....................................................................................8

Securities Indus. Ass'n. v. Connolly,
     883 F.2d 1114 (1st Cir. 1989)................................................................................16

Shearson/American Express Inc. v. McMahon,
     482 U.S. 220 (1987)...........................................................................14, 15, 16

Sorrell v. SEC,
     679 F.2d 1323 (9th Cir. 1982) ...............................................................................23

Stevens v. United States,
     2003 WL 22416149 (S.D.N.Y. Oct. 22, 2003) .......................................................7

Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.,
     130 S. Ct. 1758 (2010)...........................................................................................13

Suschil v. Ameriprise Fin. Servs., Inc.,
     2008 WL 974045 (N.D. Ohio Apr. 7, 2008)......................................................9, 20

Tarrson v. BLC Partners, LP,
     2003 WL 732391 (N.D. Ill. Feb. 14, 2003) ...........................................................16

Todd & Co. v. SEC,
     557 F.2d 1008 (3d Cir. 1977)................................................................................23

Travelers Indemnity Co. v. Sarkisian,
     794 F.2d 754 (2d Cir.); cert. denied, 479 U.S. 885 (1986).....................................8

UBS v. West Virginia Univ. Hospital,
     660 F.3d 643 (2d Cir. 2011)..............................................................................24, 25

United States v. Blumenberg,
     506 F. App'x 53 (2d Cir. 2012) ..............................................................................11

United States v. Cirami,
     563 F.2d 26 (2d Cir. 1997).......................................................................................8

United States v. Mead Corp.,
     533 U.S. 218 (2001).................................................................................................23

**TABLE OF AUTHORITIES**
(continued)

Page(s)

United States v. Wade,
  152 F.3d 969 (D.C. Cir. 1998) ................................................................22

United States v. Westlands Water Dist.,
  134 F. Supp. 2d 1111 (E.D. Cal. 2001) ...................................................22

Usinor Steel Corp. v. M/V Koningsborg,
  2004 WL 230910 (S.D.N.Y. Feb. 6, 2004) ................................................7

Velez v. Perrin Holden & Davenport Capital Corp.,
  769 F. Supp. 2d 445 (S.D.N.Y. 2011) ...............................................20, 22

Word v. Croce,
  2001 WL 755394 (S.D.N.Y. July 5, 2001) ................................................7

Young v. Greiner,
  2010 WL 3001758 (N.D.N.Y. July 28, 2010) ............................................8

STATUTES

15 U.S.C. § 4 ....................................................................................................13

15 U.S.C. § 15 ..................................................................................................13

15 U.S.C. § 78o-3(a) ........................................................................................23

15 U.S.C. § 78s(d)(2) .......................................................................................23

15 U.S.C. § 78y(a)(1) .......................................................................................23

28 U.S.C. § 1927 ................................................................................................5

29 U.S.C. § 216(b) ...........................................................................................13

29 U.S.C. § 626(b) ...........................................................................................13

FEDERAL RULES

Fed. R. Civ. P. 54(b) ..................................................................................2, 6, 7

Fed. R. Civ. P. 60(b) ..............................................................................2, 6, 7, 8

Fed. R. Evid. 401 ...............................................................................................7

v

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**OTHER AUTHORITIES**

FINRA Rule 2268 .................................................................................................18, 19, 20, 21

FINRA Rule 9268(e)......................................................................................................22

FINRA Rule 9311 ...........................................................................................................22

FINRA Rule 9349(c)......................................................................................................23

FINRA Rule 9351(e)......................................................................................................23

FINRA Rule 12200 ........................................................................................................24

FINRA Rule 12204 ........................................................................................................20

FINRA Rule 13101(a)...............................................................................................11, 12

FINRA Rule 13200 ........................................................................................................24

FINRA Rule 13204 ................................................................................................. passim

NASD Rule 10301(d)(3)................................................................................................20

## I.      <u>INTRODUCTION</u>

Plaintiffs and their attorneys refuse to accept the fact that Judge Jones granted Defendants' Motion to Compel Arbitration, correctly ruling that the arbitration agreements and class and collective action waivers they entered into with UBS are enforceable and that they are obligated to arbitrate their claims against UBS.  <u>See</u> Dkt. No. 90.  Instead, in an effort to evade their obligations under their arbitration agreements and under Judge Jones's Order compelling arbitration and staying this action, Plaintiffs filed their instant Motion in a transparent grab for a "second bite at the apple" in an effort to re-litigate the same issues Judge Jones already decided in this case.

Based on nothing more than a FINRA disciplinary hearing panel's decision in a FINRA Department of Enforcement disciplinary proceeding against Charles Schwab & Company Inc. ("Schwab") – a decision that (1) was issued by a hearing panel in an administrative disciplinary proceeding, not a court action; (2) did not involve a motion to compel arbitration or even an arbitration agreement between an employer and its employees; (3) is not a final decision as it is currently pending review on appeal in the administrative process; (4) did *not* involve the FINRA rule relied upon by Plaintiffs and at issue in this case and, instead, involved different rules concerning *customer* disputes; (5) is *not* binding on this Court or entitled to any deference; and (6) actually ruled *in favor of Schwab* and against Plaintiffs' position in this case, holding that the FINRA *Customer* Code rule at issue in that case was *unenforceable* in the face of the Federal Arbitration Act ("FAA") – Plaintiffs bring this untimely motion for reconsideration of Judge Jones's December 4, 2012 Order compelling arbitration and staying this action.  For the following reasons, Plaintiffs' unreasonable and vexatious effort to multiply the proceedings in this case should be rejected, and Judge Jones's decision should stand as the law of the case.

1

First, Plaintiffs' Motion is untimely and procedurally defective.  Insofar as Plaintiffs seek to rely on Rule 54(b) of the FRCP, Plaintiffs' Motion is untimely and must be dismissed because it was not filed within the 28 day time period set forth in Local Rule 6.3.  Insofar as Plaintiffs seek to rely on Rule 60(b) of the FRCP, their reliance is misplaced because that rule does not apply where, as here, a case has been stayed pending arbitration.  And even if Rule 60(b) applied, Plaintiffs' Motion could not succeed because the only grounds they advance for reconsideration – a supposed intervening change in decisional law – does not meet the very high standards needed to warrant relief under Rule 60(b).  Indeed, the intermediate decision by the disciplinary hearing panel in <u>Schwab</u> that is currently on administrative appeal and actually ruled *against* Plaintiffs' position in this case does not come close to satisfying the standards for relief under Rule 60(b).

Second, the law of this case – as decided by Judge Jones – is that enforcement of Plaintiffs' arbitration agreements, including the class and collective action waivers included in those agreements, is *not* inconsistent with FINRA's rules.  Applying controlling Second Circuit and New York Court of Appeals precedent, Judge Jones correctly concluded that the savings clause of FINRA Rule 13204 specifically contemplates and allows parties to enter into arbitration agreements that modify and supersede the FINRA rules.  It is this precedent (which was not addressed at all in the FINRA disciplinary hearing panel decision relied upon by Plaintiffs) that controls the outcome of this case, and Plaintiffs present no new *controlling* authority to the contrary (as they are required to do on a motion for reconsideration).

Third, even if enforcement of Plaintiffs' arbitration agreements would be inconsistent with FINRA's rules, the FAA trumps FINRA's rules – as the <u>Schwab</u> hearing panel correctly ruled – and mandates that Plaintiffs' arbitration agreements be enforced according to their

terms.[1]  Plaintiffs have not demonstrated a "contrary Congressional command" that overrides the FAA's mandate, as is required by recent Supreme Court precedent.  FINRA rules do not qualify as "Congressional commands," and neither the Securities Exchange Act of 1934 (the "Exchange Act") nor any other federal law includes a Congressional command to, or otherwise authorizes, FINRA to impose limitations on the FAA's mandate or on a member firm's rights under the FAA to enter into and enforce arbitration agreements with employees that include class and collective action waivers.  Plaintiffs' argument that Section 29(a) of the Exchange Act is such a command must be rejected both because it was waived when Plaintiffs failed to raise it in opposition to Defendants' Motion to Compel and because it is without merit.  The courts, including the Supreme Court, have long held that Section 29(a) applies only to waivers of *substantive* rights under the Exchange Act; it has no application to waivers of *procedural* rights, such as "forum selection" rights and rights to participate in class or collective actions that are waived or modified in an arbitration agreement.  Congress's recent amendments to Section 29(a) *without* disturbing this established jurisprudence refutes Plaintiffs' suggestion of a clear and explicit "contrary Congressional command" sufficient to overcome the FAA's mandate that arbitration agreements be enforced according to their terms.

Fourth, the FINRA disciplinary hearing panel's decision which Plaintiffs seek to rely upon as the basis for their Motion – that the class action waivers included in Schwab's arbitration agreements with its ***customers***[2] are inconsistent with FINRA's ***Customer*** Code – is neither

---

[1] Although the Schwab hearing panel's decision is not entitled to deference, its analysis of this issue and ruling that the FAA trumps FINRA rules and mandates that Plaintiffs' arbitration agreements be enforced according to their terms is correct, persuasive, and consistent with controlling Supreme Court authority.  See Dkt. 95-1 at 6-7, 23-28.

[2] Although Plaintiffs repeatedly refer to the Schwab decision as involving a class *and collective action* waiver, there was no collective action waiver in the Schwab arbitration agreement and the only reference to collective action waivers in the hearing panel's decision was a single reference to the decision of Judge Jones in this case, which the hearing panel correctly described as holding "that enforcement of an arbitration agreement waiving any right to proceed by class or collective action was not inconsistent with FINRA's Rules for intra-industry disputes."  [See

controlling nor entitled to deference in this case. The <u>Schwab</u> decision was issued in a

disciplinary proceeding involving FINRA's authority to enforce its rules against member firms,

and has no application in a court proceeding where FINRA is not a party and the issue is the

enforceability of private arbitration agreements between an employer and its employees.[3]

In addition, <u>Schwab</u> involved alleged violations of FINRA's ***Customer*** Code, which is

applicable to ***customer*** agreements and disputes, not the Industry Code, which is applicable to

employee agreements and disputes. The Customer Code rules at issue in <u>Schwab</u> (which

preclude *customer* agreements that waive rights under the Customer Code) are not applicable to

employees or arbitration agreements with employees and have no analog in the Industry Code,

and the <u>Schwab</u> hearing panel repeatedly emphasized that its decision dealt with access to the

courts by *customers* (not employees). Indeed, the <u>Schwab</u> hearing panel specifically referenced

Judge Jones's decision and Order compelling arbitration in this case and explained that Judge

Jones's decision here "does not apply to [the] customer-industry disputes" at issue in <u>Schwab</u>

because of the important differences between the rules of the Customer Code at issue in <u>Schwab</u>

and the rules of the Industry Code at issue here. <u>See</u> Dkt. No. 95-1 at 18 n.58.[4]

Furthermore, Plaintiffs concede that the FINRA hearing panel in <u>Schwab</u> has no special

experience or expertise in evaluating the statute that controls this case – the FAA – and that the

panel's conclusions are not entitled to any deference beyond their ordinary persuasive effect

insofar as they concern the FAA. <u>See</u> Dkt. No. 94 at 15 n.28. Moreover, the panel's ultimate

---

Dkt. 95-1 at 18 n.58] The hearing panel went on to observe correctly that the FINRA Rules at issue in this case (<u>Cohen</u>) do "not apply to customer-industry disputes." <u>Id</u>.

[3] FINRA's ability to enforce its own rules in a disciplinary proceeding is irrelevant to a private party's ability to enforce a private arbitration agreement. <u>See</u> <u>Preston v. Ferrer</u>, 552 U.S. 346, 359 n7 (2008) (enforcing arbitration agreement between private parties while recognizing that such "[e]nforcement … does not displace any independent authority the [state] Labor Commissioner may have to investigate and rectify violations of [a state statute]").

[4] The Schwab hearing panel also expressly declined the opportunity to opine on "whether [Judge Jones's decision in this case] is correct." <u>Id</u>.

conclusion – that the FINRA rules at issue in that case are not enforceable because they are trumped by the FAA – was correct.  Thus, given the panel's ultimate conclusion, the interim ruling of the panel that Plaintiffs seek to rely upon is nothing more than dicta and not entitled to deference.  The hearing panel's decision is also not entitled to any deference because it does not constitute an *governmental agency* opinion interpreting its own rules or regulations, and because it is not a final decision as it is currently pending review on appeal in an administrative process.  Indeed, even the SEC provides zero deference to decisions by FINRA hearing panels.

Finally, Plaintiffs' argument based upon FINRA's membership agreement must be rejected both because it was waived when Plaintiffs failed to raise it in opposition to Defendants' motion to compel arbitration and because it is baseless.  Indeed, FINRA's membership agreement is not part of the record in this case, and was never referenced let alone relied upon by Plaintiffs in their opposition to UBS's motion to compel arbitration.  Moreover, the basis for UBS's motion to compel arbitration and Judge Jones's order compelling arbitration was Plaintiffs' arbitration agreements, not FINRA's membership agreement to which Plaintiffs are not even parties.

For all of these reasons, and as set forth more fully below, this Court should reject Plaintiffs' clearly unreasonable and vexatious effort to multiply the proceedings, deny Plaintiffs' Motion, and enforce Judge Jones's Order compelling arbitration as the law of this case.[5]

---

[5] The Court should also award Defendants their fees and costs incurred in opposing this Motion as a sanction under Federal Rule 11(c)(1) or 28 U.S.C. § 1927.  There is no basis for Plaintiffs' unreasonable and vexatious effort to multiply the proceedings by seeking to re-litigate the same issues already decided by Judge Jones in this case.

## II.   ARGUMENT

### A.   Plaintiffs' Motion Should Be Denied Because It Is Untimely Under Local Rule 6.3 And Procedurally Defective Under FRCP Rules 54(b) and 60(b).

Local Rule 6.3 imposes a 28 day time limit on motions seeking reconsideration of a prior order.  "The failure to timely make a motion for reconsideration pursuant to [Local] Rule 6.3 is alone sufficient grounds to deny the motion."  See DDR Constr. Servs., Inc. v. Siemens Indus., Inc., 2012 WL 4711677, at *2 (S.D.N.Y. Sept. 26, 2012).  Although Plaintiffs frame their Motion as an application pursuant to Rule 54(b), in actuality, it is a motion for reconsideration or re-argument governed by Local Rule 6.3 and, consequently, should be denied as untimely because it was not filed within the 28 day limitations period provided in Local Rule 6.3.[6]  Id. at *1 ("Plaintiff[s'] attempts to vacate and/or modify [the court's prior order] by framing [the motion] as an application pursuant to Rule 54(b) [should be rejected because,] in actuality, it is a motion for reconsideration or re-argument governed by Local Rule 6.3"); see also Doe v. Karadzic, 1999 WL 6360, at *1 n1 (S.D.N.Y. Jan. 7, 1999) (construing motion made under Rule 54(b) as one made under Local Rule 6.3).[7]

The same is true where, as here, Plaintiffs try to avoid the 28 day time limit imposed by Local Rule 6.3 by styling their motion as one under Rule 60(b).  See Rispler v. Sol Spitz Co., Inc., 2006 WL 3335056, at *1 (E.D.N.Y. Oct. 18, 2006) (construing Rule 60(b) motion that did

---

[6] Plaintiffs' Motion was filed on July 3, 2013, which is 211 days after Judge Jones's December 4, 2012 Order, and even 132 days after the Schwab hearing panel's February 21, 2013 decision on which they rely.  By any possible benchmark, Plaintiffs' Motion is untimely.

[7] While Plaintiffs suggest that they are "entitled to bring this motion" at this late date "[s]ince no arbitration has been commenced and no arbitration award has been sought to be entered as a judgment" (Dkt. No. 94 at 5), they offer no authority to support this novel theory, and indeed there is none.  Moreover, Plaintiffs should be estopped from making this argument since the only reason no arbitration has been commenced and no arbitration award has been sought to be entered as a judgment is because Plaintiffs have remained steadfast in their refusal to comply with their obligations under their arbitration agreements and under Judge Jones's Order compelling arbitration and staying this action, and have instead chosen to file this Motion in an effort to re-litigate the issues already decided by Judge Jones rather than pursue their claims in arbitration as ordered by Judge Jones.

not relate to a "final judgment" as one under Rule 54(b), and denying motion as untimely because it was not brought within the time limits of Local Rule 6.3).

Moreover, Rule 60(b) has no relevance to Plaintiffs' motion because Judge Jones's December 4, 2012 Order did not dismiss this case, but rather stayed it; and such a stay does not constitute a "final judgment or order" as necessary to seek relief under Rule 60. See Usinor Steel Corp. v. M/V Koningsborg, 2004 WL 230910, at *3 (S.D.N.Y. Feb. 6, 2004) (stay during arbitration "is not appealable as a final order") (citing Salim Oleochemicals v. M/V Shropshire, 278 F.3d 90 (2d Cir. 2002)).  Accordingly, Plaintiffs' Motion is nothing more than a grossly out-of-time motion for reconsideration, and on that basis alone should be denied.

Even if Rule 60(b) applied to Plaintiffs' Motion – which it does not – their Motion must be denied because it relies wholly on a claimed "intervening change in law" allegedly created by the Schwab disciplinary hearing panel's decision.  See Mem. at 6.[8]  As a threshold matter, and as more fully explained below (at 18-23), this disciplinary hearing panel decision is not an

---

[8] Although Plaintiffs also suggest in the alternative that the disciplinary hearing panel's decision provides grounds for relief under Rule 60(b) because it is "new evidence," a decision by a hearing panel is not evidence.  See Fed. R. Evid. 401 (stating that relevant evidence is information "having any tendency to make the existence of *any fact* that is of consequence to the determination of the action more probable or less probable than it would be without the evidence") (emphasis added); Stevens v. United States, 2003 WL 22416149, at *2 (S.D.N.Y. Oct. 22, 2003) (holding that, under Rule 60, a favorable decision reached in a separate civil proceeding was not "evidence"); cf. McNeil v. Nat'l Football League, 777 F. Supp. 1475, 1479-80 (D. Minn. 1991) (holding that advisory letter by NLRB was not new "evidence" under Rule 60).

In addition, even if the hearing panel's decision were a form of evidence, "Local Rule 6.3 does *not* afford the losing party the right to submit *new evidence*," Word v. Croce, 2001 WL 755394, at *5 (S.D.N.Y. July 5, 2001) (emphasis added), and any "new material [submitted as new evidence] should be stricken and disregarded." ResQNet.com, Inc. v. Lansa, Inc., 2005 WL 2241524, at *1 (S.D.N.Y. Sept. 15, 2005), aff'd in part, rev'd in part on other grounds, 594 F.3d 860 (Fed. Cir. 2010).

Similarly, insofar as Plaintiffs contend that the hearing panel's decision constitutes "newly discovered" evidence under Rule 60(b)(2), the hearing panel's decision cannot constitute "newly discovered" evidence because it did not exist at the time of the prior adjudication.  "Evidence is considered 'newly discovered' for purposes of Rule 60(b)(2) only if it 'existed at the time of the prior adjudication but ... was discovered by the movant only after the entry of judgment.'"  Johnson v. Askin Capital Mgmt., L.P., 202 F.R.D. 112, 114 (S.D.N.Y. 2001) (quoting Walker v. Dep't of Veterans Affairs, 1995 WL 625689, at *1 (S.D.N.Y. Oct. 25, 1995)).

intervening change in controlling decisional law.  Moreover, even if it were an intervening

change in controlling decisional law, Plaintiffs' Motion still should be denied because "a mere

change in decisional law is not grounds for relief under Rule 60(b)(6)."  Young v. Greiner, 2010

WL 3001758, at *1 (N.D.N.Y. July 28, 2010); see also Marrero Pichardo v. Ashcroft, 374 F.3d

46, 56 (2d Cir. 2004) ("mere change in decisional law does not constitute an 'extraordinary

circumstance' for the purposes of Rule 60(b)(6)"); Travelers Indemnity Co. v. Sarkisian, 794

F.2d 754, 757 (2d Cir.), cert. denied, 479 U.S. 885 (1986) (affirming denial of Rule 60(b)(6)

motion for relief from dismissal order based on Supreme Court's reversal of authority on which

dismissal relied, holding that "a change in decisional law is not grounds for relief under Rule

60(b)(6)").  Rather, Rule 60(b) is "a mechanism for 'extraordinary judicial relief' invoked only if

the moving party demonstrates 'exceptional circumstances,'" see Ruotolo v. City of New York,

514 F.3d 184, 191 (2d Cir. 2008) (internal citation omitted), such as the "complete" or

"constructive disappearance" of a party's attorney, see United States v. Cirami, 563 F.2d 26, 34

(2d Cir. 1997)) or a party's failure to cite then-existing dispositive Second Circuit authority

during the original motion proceedings, solely due to "incompetent lawyering," "abysmal"

performance, and "incredible" mistakes by the party's former counsel.  See Marrero Pichardo,

374 F.3d at 55-56.  Plaintiffs allege nothing that even remotely approaches such "extraordinary

circumstances" and thus their attempt to invoke Rule 60(b)(6) must fail.

**B.    The Law Of The Case Is That Enforcement of Plaintiffs' Arbitration
        Agreements Would Not Be Inconsistent With FINRA's Rules.**

Judge Jones correctly ruled that enforcement of Plaintiffs' arbitration agreements (and the

class and collective action waivers included therein) would not be inconsistent with FINRA's

rules, because FINRA member firms and their employees are free to enter into arbitration

agreements that modify and supersede FINRA's rules, and those agreements must be enforced

according to their terms.  Thus, as Judge Jones has already ruled, the savings clause in Rule 13204 specifically "(1) recognizes that parties may choose to enter into additional arbitration agreements beyond the scope of the Code, and (2) provides that the Code does not affect the enforceability of these additional agreements."  See Dkt. No. 90 at 7.  Indeed, there is no provision in the FINRA Industry Code that prohibits member firms and their employees from entering into agreements in which the employees agree to waive any right they may have to file or participate in a class or collective action in exchange for valuable consideration, as Plaintiffs and UBS did here.  To the contrary, the savings clause in the last sentence of Rule 13204 states that nothing in that Rule will "otherwise affect the enforceability of any rights under the Code *or any other agreement*."  Rule 13204 (emphasis added.)  Thus, Rule 13204 explicitly contemplates that member firms and associated persons can enter into separate agreements, and expressly provides that nothing in that Rule will affect the enforceability of any rights under those separate agreements, including private arbitration agreements that contain class and collective action waivers.  See Dkt. No. 90 at 7-8; Suschil v. Ameriprise Fin. Servs., Inc., 2008 WL 974045, at *6 (N.D. Ohio Apr. 7, 2008) ("Plaintiffs and Ameriprise agreed to arbitrate their Claims and agreed to forego their class action remedies.  This Court cannot overlook the exception delineated at the close of the FINRA/NASD class action rule:  'This paragraph does not otherwise affect the enforceability of any rights under the Code *or any other agreement.*'") (emphasis in original).  Thus, as Judge Jones correctly held, Rule 13204 explicitly permits parties to enter into separate and enforceable arbitration agreements that include class and collective action waivers.

Judge Jones also correctly observed that Rule 13204(a) specifically speaks to the possibility that potential class members may elect not to participate in a class.  Thus, enforcement of Plaintiffs' arbitration agreements would be consistent with Rule 13204(d)

because Rule 13204(d) specifically contemplates that associated persons (e.g., registered employees like Plaintiffs) may elect not to participate in class actions.[9]  Here, as expressly contemplated by Rule 13204(d), each Plaintiff affirmatively elected not to participate in class or collective actions by agreeing to the class and collective action waivers contained in their arbitration agreements in exchange for valuable consideration.

Most importantly, Judge Jones correctly held that "the Court's reading of the Code is consistent with numerous decisions which have acknowledged that parties may contract beyond the default arbitration rules in the securities industry."  See Dkt. No. 90 at 7-8 (citing Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis, 903 F.2d 109, 113 (2d Cir. 1990) (in holding that a stock exchange arbitration rule was validly modified and superseded by the member firm's separate arbitration agreement, the Second Circuit ruled that, under "ordinary contract principles," stock exchange arbitration rules "may be superseded by a more specific … agreement of the parties" and that, where "parties have agreed explicitly to settle their disputes only before particular arbitration fora, that agreement controls"); Credit Suisse First Boston Corp. v. Pitofsky, 4 N.Y.3d 149, 155 (2005) (reversing Appellate Division's decision that "employment agreements cannot supersede the previously executed Form U-4 agreements" between registered employees and a stock exchange; the New York Court of Appeals held that, under established principles of contract law, member firms and their employees can enter into arbitration agreements that modify and supersede the Form U4 arbitration agreement and the applicable stock exchange arbitration rules, and that "CSFB and its registered representatives were free to negotiate the terms by which they would arbitrate employment-related disputes …

---

[9] More specifically, Rule 13204(d) expressly provides for the enforcement of arbitration agreements against members of a certified or putative class where "[t]he member of the certified or putative class elects not to participate in the class[.]"  This Rule, therefore, puts in the hands of each employee the decision as to whether or not he or she wants to participate in class actions.

Accordingly, the parties were free to supplant or modify the Form U-4 arbitration agreement with the protocols articulated in the [employer's arbitration agreement]"); Chanchani v. Salomon/Smith Barney, Inc., 2001 WL 204214, at *5 (S.D.N.Y. Mar. 1, 2001) ("[T]he terms of the U-4s and the NYSE rules in no way prohibit member [firms] from entering into separate, private arbitration agreements with their employees")).  See also Creative Sec. Corp. v. Bear Stearns & Co., 671 F. Supp. 961, 967 (S.D.N.Y. 1987) (member firms may enter into agreements that "can validly modify the arbitration provisions of the NASD as they apply to the parties to such agreements"), aff'd, 847 F.2d 834 (2d Cir. 1988); Cohen v. Bovino, 2007 N.Y. Misc. LEXIS 8801, at *9-10 (N.Y. Sup. Ct. 2007) (parties' arbitration agreement validly modified and superseded arbitration agreement in Form U4 and stock exchange arbitration rules).

While Plaintiffs incorrectly describe the FINRA hearing panel's decision in Schwab as "controlling law," they conveniently ignore the *actual* controlling law in the aforementioned Second Circuit and New York Court of Appeals decisions, and other caselaw within this Circuit, that are directly on point and were properly relied upon by Judge Jones in her decision.[10]  Judge Jones's opinion therefore constitutes the "law of the case," which "forecloses reconsideration of issues that were decided – or that could have been decided – during prior proceedings."  United States v. Blumenberg, 506 F. App'x 53, 54 (2d Cir. 2012) (quoting United States v. Williams, 475 F.3d 468, 471 (2d Cir. 2007)).

Finally, the FINRA Code – including Rule 13204 – applies only to disputes submitted to arbitration before FINRA.  Specifically, Rule 13101(a) – which sets forth the "Applicability of [the] Code" – states in unambiguous terms that:  "The Code applies to any dispute that is

---

[10] These controlling decisions were not cited, addressed, distinguished, or even acknowledged by the Schwab disciplinary hearing panel.  This is yet another reason why the Schwab hearing panel's decision that the class action waivers included in Schwab's arbitration agreements with its *customers* are inconsistent with FINRA's *Customer* Code is not entitled to deference by this Court.

submitted to arbitration under the Code." FINRA Rule 13101(a) (emphasis added). Rule 13204

therefore has no application to disputes filed in court. Thus, enforcement of Plaintiffs'

arbitration agreements and class and collective action waivers would be consistent with FINRA

Rule 13204[11] – as recognized by Judge Jones – and, consequently, their arbitration agreements

should be enforced according to their terms, as ordered by Judge Jones.

> **C. Even If Plaintiffs' Arbitration Agreements Were Inconsistent With FINRA's Rules, The FAA Trumps FINRA's Rules And Mandates That Plaintiffs' Arbitration Agreements Be Enforced According To Their Terms.**

While Judge Jones properly concluded that Plaintiffs' arbitration agreements with UBS

are not inconsistent with FINRA's rules, even if they were, the FAA trumps FINRA's rules and

mandates that Plaintiffs' arbitration agreements (and the class and collective action waivers

included therein) be enforced according to their terms. See, e.g., AT&T Mobility v. Concepcion,

131 S. Ct. 1740, 1748, 1753 (2011) ("[T]he overarching purpose of the FAA . . . is to ensure the

enforcement of arbitration agreements according to their terms so as to facilitate streamlined

proceedings. Requiring the availability of classwide arbitration interferes with fundamental

attributes of arbitration and thus creates a scheme inconsistent with the FAA," "even if desirable

---

[11] Insofar as Plaintiffs rely – as they did before Judge Jones – on recent amendments to Rule 13204 that seek to extend the Rule to apply to collective action claims, their reliance is misplaced because: (1) the amendment was not effective until July 9, 2012, which is long after Plaintiffs' arbitration agreements were entered into and this action was filed, and even after UBS's motion to compel arbitration was filed and fully briefed; and (2) the amendment is not retroactive and has no application to this case or this motion because there is no "clear congressional intent favoring" retroactive application. See Landgraf v. USI Film Prods., 511 U.S. 244, 265, 268 (1994) ("the presumption against retroactive legislation . . . is deeply rooted in our jurisprudence" and "elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted"); Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988) ("a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms"). Here, Plaintiffs received valuable consideration for their agreements to arbitrate and collective action waivers, and it would be fundamentally unfair to now invalidate those agreements and waivers based on a FINRA rule that was not in place when the agreements were made. See Dkt. Nos. 63 at ¶¶ 2-20 & Exs. 1-21 and 64 at 3-6, 8 & nn.8-9. And even assuming *arguendo* this amendment applies to Plaintiffs' arbitration agreements – which it does not – UBS's arguments concerning why Plaintiffs' arbitration agreements and class and collective action waivers are consistent with Rule 13204 and should be enforced would still apply, as would UBS's additional argument that FINRA Rule 13204 is unenforceable because it is trumped by the FAA.

for unrelated reasons"); see also Stolt-Nielsen SA v. AnimalFeeds Int'l Corp., 130 S. Ct. 1758, 1775 (2010) ("In bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution:  lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes"); Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995); Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

As the Supreme Court recently held in Compucredit Corp. v. Greenwood, 132 S. Ct. 665 (2012), the FAA requires that arbitration agreements be enforced according to their terms "even when the claims … are federal statutory claims, *unless the FAA's mandate has been overridden by a contrary Congressional command*." Id. at 669 (emphasis added.)  And even more recently, the Supreme Court reemphasized that courts must "rigorously enforce" arbitration agreements according to their terms – even as to claims brought under federal statutes that expressly vest jurisdiction with the federal district courts.  See American Express Co. v. Italian Colors Restaurant, 133 S.Ct. 2304, 2309-10 (2013) (finding no "contrary Congressional command" in the Sherman Act and Clayton Act that would override the FAA).[12]  Moreover, the Supreme Court emphasized in this decision that, in its prior decision in "Gilmer ... we had no qualms in enforcing a class waiver in an arbitration agreement even though the federal statute at issue [ADEA],[13] expressly permitted collective actions."  Id. at 2311 (citing with approval

---

[12] Both the Sherman Act and the Clayton Act expressly vest the federal district courts with jurisdiction over antitrust claims brought thereunder.  See 15 U.S.C. § 4 ("The … district courts … are invested with jurisdiction to prevent and restrain violations of [the Act]") (Sherman Act); 15 U.S.C. § 15 ("any person who shall be injured … may sue therefor in any district court …") (Clayton Act).

[13] The statutory provision focused on by the Supreme Court in Gilmer that expressly permitted collective actions under ADEA is precisely the same provision that expressly permits collective actions under the FLSA.  See 29 U.S.C. § 216(b) (FLSA collective action provision); 29 U.S.C. § 626(b) ("[t]he provisions of this chapter [the ADEA] shall be enforced in accordance with the powers, remedies, and procedures provided in [§] 216 (except for subsection (a) thereof) … of this title").

enforcement of arbitration agreement with class and collective action waiver in Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991)).

Here, Plaintiffs have not met their burden of demonstrating a "contrary Congressional command" to counter the FAA's mandate.  See Shearson/American Express Inc. v. McMahon, 482 U.S. 220, 227 (1987) ("the burden is on the party opposing arbitration . . . to show that Congress intended to preclude a waiver of judicial remedies").  Neither FINRA Rule 13204 (the FINRA rule relied upon by Plaintiffs) nor the regulatory history of how FINRA or its predecessor NASD promulgated Rule 13204 qualifies as a "Congressional command" to counter the FAA's mandate.  Thus, even if there was a conflict between Plaintiffs' arbitration agreements and FINRA's rules – which there is not – the FAA's mandate must prevail and Plaintiffs' arbitration agreements must be enforced according to their terms, as Judge Jones did in this case.

Moreover, there is nothing in the Exchange Act – the Act of Congress relied upon by Plaintiffs in their Motion – that provides a "contrary Congressional command" to counter the FAA's mandate or authorizes FINRA to impose limitations on the FAA's mandate or on a member firm's rights under the FAA to enter into and enforce arbitration agreements with its employees that include class and collective action waivers.[14]

Plaintiffs' belated attempt to identify a "contrary Congressional command" that they claim overcomes the FAA's mandate by citing Section 29(a) of the Exchange Act fails.  As a threshold matter, Plaintiffs waived this argument because they failed to raise it before Judge Jones in opposition to UBS's motion to compel arbitration.[15]  "[A] party is barred from making

---

[14] Plaintiffs have identified no provision of the Exchange Act or the legislative history of the Exchange Act that suggests let alone demonstrates that Congress intended the Act to override the FAA's mandate by ensuring that employees of FINRA member firms have an unwaivable right to pursue employment claims against their employers in class and collective actions in court rather than in non-class arbitrations.

[15] Plaintiffs do not even allege that they raised this argument in opposition to the motion to compel.  Instead, they suggest only that "their argument before Judge Jones was directly in line with Section 29(a) of the Exchange Act".

for the first time in a motion for reconsideration an argument it could readily have raised when the underlying issue was being briefed but chose not to do so."  City of Austin Police Retirement Sys. v. Kinross Gold Corp., 2013 WL 2449188, at *5 (S.D.N.Y. June 6, 2013) (quoting Associated Press v. U.S. Dep't of Def., 395 F. Supp. 2d 17, 20 (S.D.N.Y. 2005)).

Moreover, Plaintiffs have not met their burden of showing that a contrary Congressional command sufficient to overcome the FAA's mandate is "deducible from [the] text or legislative history [of Section 29]," or "from an inherent conflict between arbitration and the statute's underlying purpose."  McMahon, 482 U.S. at 227 (citations omitted).  Indeed, the Supreme Court held in McMahon that there is no such "contrary Congressional command" in Section 29(a), and that Section 29(a) "was designed to prohibit waiver of only the '*substantive* obligations imposed by the Exchange Act.'"  Roney & Co. v. Goren, 875 F.2d 1218, 1220 (6th Cir. 1989) (quoting McMahon, 482 U.S. at 228) (emphasis added).  In other words, "Section 29(a) is concerned, not with whether brokers 'maneuver[ed] customers into' an agreement, but with whether the agreement 'weaken[s] [the customer's] ability to recover under the [Exchange] Act.'"  McMahon, 482 U.S. at 230 (citing Wilko v. Swan, 346 U.S. 427, 432 (1953)).  Arbitration agreements that waive access to a judicial forum do not trigger and are not void under Section 29(a) because, as the Supreme Court has repeatedly recognized, arbitration agreements are "in effect, a specialized kind of forum-selection clause" and thus do not waive any *substantive* rights, including those protected by the Exchange Act.  Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 482-83 (1989) (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 (1974)); see also Preston, 552 U.S. at 359 (arbitration agreement concerns only "the forum in which the parties' dispute will be heard" and its parties "relinquish

---

See Dkt. No. 94 at 2.  This assertion is neither accurate nor sufficient to overcome the uncontested fact that Plaintiffs failed to make this argument or even reference Section 29(a) of the Exchange Act in their opposition to the motion to compel, and it is far too late for them to make this argument for the first time in this Motion.

[] no substantive rights" by agreeing to arbitrate) (citing <u>Mitsubishi Motors Corp. v. Soler</u> <u>Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 628 (1985)).  Even statutory provisions that, unlike Section 29(a), expressly provide individuals with a "right to sue" in "court" and further provide that a waiver of rights "shall be treated as void" do *not* constitute the type of clear statement of Congressional intent required to trump the FAA.  <u>See</u> <u>CompuCredit</u>, 132 S.Ct. at 670-71.

Based on <u>McMahon</u> and <u>Rodriguez de Quijas</u>, the courts have repeatedly concluded that "nothing in … the Exchange Act … manifests a congressional intent to limit or prohibit waiver of a judicial forum for a particular claim, or to abridge the sweep of the FAA."  <u>Securities Indus.</u> <u>Ass'n. v. Connolly</u>, 883 F.2d 1114, 1121 (1st Cir. 1989); <u>see also</u> <u>Roney</u>, 875 F.2d at 1221-23 (rejecting Section 29(a) challenge to enforceability of forum selection clause in arbitration agreement that required arbitration before the NYSE, not the NASD, because the anti-waiver provision in Section 29(a) was designed to prohibit waiver of only the "substantive obligations imposed by the Exchange Act," quoting <u>Shearson/American Express, Inc. v. McMahon</u>, 482 U.S. 220, 228 (1987); and further holding that the plaintiff's "ability to demand arbitration before the arbitral forum of his choice dictates that he is equally free to agree to limit his recourse to a particular forum"); <u>Tarrson v. BLC Partners, LP</u>, 2003 WL 732391, at *5 (N.D. Ill. Feb. 14, 2003) (holding that the anti-waiver provision in Section 29(a) does not bar enforcement of a voluntarily agreed-upon forum selection clause in an arbitration agreement).  Like the Sherman and Clayton Acts most recently analyzed by the Supreme Court, Section 29(a) of the Exchange Act "make[s] no mention of class actions" and thus evinces no "exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  <u>Amex</u>, 133 S.Ct. 2304, 2309 (citing <u>Califano v. Yamasaki</u>, 442 U.S. 682, 700-701 (1979)).

In addition, Congress's recent amendment of the Exchange Act *undermines*, rather than supports, Plaintiffs' argument.  As the Supreme Court observed in CompuCredit regarding the Credit Repair Organization Act (CROA), "[h]ad Congress meant to prohibit these very common [arbitration] provisions in the CROA, it would have done so in a manner less obtuse than what respondents suggest.  When it has restricted the use of arbitration in other contexts, it has done so with a clarity that far exceeds the claimed indications in the CROA."  CompuCredit, 132 S.Ct. at 672 ("It takes a considerable stretch to regard the nonwaiver provision [in the CROA] as a 'Congressional command' that the FAA shall not apply").  The same reasoning applies to the Exchange Act.  Had Congress "meant to prohibit" arbitration agreements like Plaintiffs', it would have taken the opportunity presented when amending the Exchange Act to do so *clearly*, rather than in the obtuse fashion suggested by Plaintiffs.  Indeed, the fact that Congress left Section 29(a) substantively intact – simply substituting the words "self regulatory organization" for "exchange" to reflect FINRA's succession of the NASD and NYSE – evinces Congress's acquiescence with long-standing judicial interpretation of Section 29(a) as *not* placing any restrictions on parties' rights to enter into and enforce arbitration agreements that include class and collective action waivers.

Importantly, although the Schwab hearing panel's decision is not entitled to deference, it is worth noting that the Schwab hearing panel correctly ruled in that decision that, insofar as FINRA's rules would bar enforcement of a class action waiver in an arbitration agreement, FINRA's rules are trumped by and unenforceable under the FAA:

> Supreme Court precedent … compels the Hearing Panel to conclude that the FAA bars enforcement of the FINRA's Rules to the extent that the Rules require that customers be given the option to bring their claims in court in the form of judicial class actions, despite any pre-dispute agreement to resolve disputes in arbitration. Rules that override an agreement to arbitrate and allow a party to an arbitration agreement to avoid arbitration represent the kind of 'hostility' to arbitration that

- 17 -

the Supreme Court has repeatedly found inappropriate and unenforceable under the FAA.  … The Hearing Panel reads … Supreme Court precedents to mean that countervailing policy concerns … cannot override the FAA's mandate, unless there is a clear expression of *congressional* intent to carve out an exception to the FAA.  Without an indication that Congress itself wished to create an exception to the FAA, other policy makers must give way to the FAA.  … [T]he Hearing Panel finds no such clear expression of *congressional* intent to preserve judicial class actions as an option for customer claims against a securities broker-deal in direct contradiction of an agreement to arbitrate those claims.

*          *          *

[T]he Supreme Court has consistently held that the mandate of the FAA cannot be overridden by other policy makers.  Only *Congress* can create an exception to the FAA.

*          *          *

FINRA's promulgation of a Rule pursuant to SEC approval and oversight that preserves judicial class actions as an option is not the same as a *congressional* command creating an exception to the FAA.  Rather, the Rule represents only a determination by FINRA, pursuant to its general authority to promulgate Rules, to make an exception to the FAA.  FINRA's general authority to promulgate Rules is not a *congressional* command to promulgate the particular Rule carving out an exception to the FAA.

<u>See</u> Dkt. No. 95-1 at 6-7, 26, 28.  (emphasis in original; citations omitted.)

> **D.    The <u>Schwab</u> Hearing Panel's Interim Conclusion That Schwab Violated FINRA Rules 2268(d)(1) and (d)(3) Of Its *Customer* Code Is Neither Controlling Law Nor Entitled To Deference In This Case.**

The <u>Schwab</u> hearing panel's interim conclusion that Schwab violated FINRA Rules 2268(d)(1) and (d)(3) of the **Customer** Code is neither controlling law nor entitled to deference in this case.

First, the <u>Schwab</u> decision was issued in a disciplinary proceeding involving FINRA's authority to enforce its Customer Code rules against member firms, and thus has no application in this court action where FINRA is not a party and where the issue is enforceability of private arbitration agreements between an employer and its employees.

- 18 -

Second, the <u>Schwab</u> disciplinary proceeding involves alleged violations of rules under FINRA's *Customer* Code (which applies only to *customer* disputes) – not FINRA's *Industry* Code (which applies to employee disputes), and the <u>Schwab</u> hearing panel repeatedly emphasized that its decision dealt with access to the courts by *customers* (not employees).[16]  Specifically, the disciplinary hearing panel concluded that Schwab's inclusion of a class action waiver in its *customer* agreements violated Rules 2268(d)(1) and (d)(3) of FINRA's *Customer* Code, which prohibit member firms from placing "any condition" in a pre-dispute arbitration agreement that either "limits the ability of a party to file any claim in court permitted to be filed in court under the rules of the forums in which a claim may be filed under the agreement" or "limits or contradicts the rules of any self-regulatory organization."  Dkt. No. 94 at 9-10 (citing FINRA Rules 2268(d)(1), (d)(3)).  Plaintiffs claim "the Industry rules contain identical language," Dkt. No. 94 at 10, but do not cite any such language.  In fact, there is no "identical language" in the Industry Code applicable to employees and employee disputes.  While FINRA Rule 2268 prescribes the content of "predispute arbitration agreements for *customer* accounts" (emphasis added), there is *no* such rule regulating the content of predispute arbitration agreements with employees like Plaintiffs.[17]  Indeed, there is no FINRA rule prohibiting arbitration agreements with *employees* that contain provisions contrary to other FINRA

---

[16] <u>See</u> Dkt. No. 95-1 at 16-18 (Rules 2268(d)(1) and (d)(3) "were clearly intended – and have been understood – to preserve *customers*' option to participate in a judicial class action … ."  "This case involves … violations of … FINRA rules by [Schwab] through its placement of a class action waiver in nearly seven million *customer* agreements") (emphasis supplied).

[17] UBS already raised and argued this very same point in its Reply Brief before Judge Jones when Plaintiffs first tried to rely on the Schwab Complaint in opposing UBS's motion to compel arbitration.  <u>See</u> Dkt. No. 78 at 7 n.5. Unhappy with Judge Jones's decision, Plaintiffs now seek to relitigate this very same issue before this Court.

rules or which limit employees' ability to file claims in court.[18]  Thus, the hearing panel's

decision regarding the enforceability of Schwab's agreements with its *customers* under

the *Customer* Code has no bearing on this Court's analysis of the enforceability of UBS's

arbitration agreements with its employees, including Plaintiffs.[19]

---

[18] Unlike FINRA Rule 2268, Rule 13204 (the rule Plaintiffs rely upon in this case) includes no provision that seeks to prohibit member firms from placing "any condition" in arbitration agreements with their employees that either "limits the ability of a party to file any claim in court permitted to be filed in court under the rules of the forums in which a claim may be filed under the agreement" or "limits or contradicts the rules of any self-regulatory organization."  While Plaintiffs seek to overcome this hurdle by pointing to FINRA Rule 12204 of the ***Customer*** Code, which they describe as supporting their position and as being "also found" in the Industry Code (see Dkt. No. 94 at 10), they concede as they must that the interim finding by the <u>Schwab</u> hearing panel upon which they seek to rely here was based on violations of Rule 2268(d)(1) and (d)(3), *not* Rule 12204.  <u>Id</u> at 10-11 ("The first two causes of action in this disciplinary proceeding … charge that new provisions in [Schwab's] *customer* agreements by which a *customer* waives any ability to assert a claim by means of a judicial class action conflict with and violate FINRA Rules *2268(d)(1) and (d)(3)* [and predecessor NASD Rules].  *These* Rules operate to preserve judicial class actions as an alternative to arbitration, even when there is a pre-dispute arbitration agreement between a FINRA member firm and its *customer*.  The Hearing Panel concludes that [Schwab's] new language does conflict with and violate *these* Rules.) (Emphasis added.)  <u>See also</u> Dkt. No. 95-1 at 1, 16 & n.53.

[19] While Plaintiffs summarily claim this is a "distinction without a difference," (Dkt. 94 at 9), they are wrong and the cases on which they rely are inapposite.  <u>Id</u>. at 9 n.18.  <u>Gomez v. Brill Securities, Inc.</u>, 95 A.D.3d 32 (1st Dep't 2012) and <u>Velez v. Perrin Holden & Davenport Capital Corp.</u>, 769 F. Supp. 2d 445 (S.D.N.Y. 2011) – two cases Plaintiffs cited in their unsuccessful opposition to UBS's motion to compel arbitration – are inapposite because, unlike this case, they did not involve the enforcement of a separate agreement that includes an express waiver of the right to participate in a class or collective action.  The same holds true for <u>Abed v. John Thomas Fin., Inc.</u>, 2013 WL 3064624 (N.Y. App. Div. 1st Dep't June 20, 2013), in which the court specifically observed that parties can agree to arbitrate "under the auspices of FINRA" *without* agreeing to abide by all of FINRA's arbitration rules, so long as there is an "express agreement" to that effect.  <u>See</u> <u>Abed</u>, 2013 WL 3064624, at *1 (citing <u>Macquarie Holdings (USA) Inc. v. Song</u>, 82 A.D.3d 566, 567 (1st Dep't 2011)).  Finally, Plaintiffs' reliance on <u>Good v. Ameriprise</u>, 2007 WL 628196 (D. Minn. Feb. 8, 2007) is misplaced because, *inter alia*, (1) they failed to cite or argue this decision (which was available to them at the time) in their opposition to UBS's motion to compel arbitration and, consequently, it is too late for them to seek to rely upon it now; (2) it is not controlling authority in the Second Circuit; (3) controlling precedent in the Second Circuit fully supports Judge Jones's decision that enforcement of Plaintiffs' arbitration agreements, including the class and collective action waivers included in those agreements, would not be inconsistent with FINRA's rules because the savings clause of FINRA Rule 13204 specifically contemplates and allows parties to enter into arbitration agreements that modify and supersede the FINRA rules, and the <u>Good</u> decision neither discusses nor opines on the effect of the savings clause in Rule 13204 nor addresses nor distinguishes the controlling Second Circuit authority on that point; (4) other court decisions since <u>Good</u> have expressly held that the savings clause of Rule 13204 allows member firms to enter into enforceable separate arbitration agreements with their employees that include class and collective action waivers (see <u>Suschil v. Ameriprise Fin. Servs., Inc.</u>, 2008 WL 974045, at *6; (5) the <u>Good</u> decision neither discusses nor opines on UBS's argument that, even if Plaintiffs' arbitration agreements were inconsistent with FINRA's rules, the FAA trumps and mandates that Plaintiffs' arbitration agreements be enforced according to their terms; (6) the <u>Good</u> decision was based upon language in the then-in-effect NASD Rule 10301(d)(3) which does not appear in FINRA Rule 13204; and (7) Judge Jones disagreed with the court in <u>Good</u> and correctly observed that Rule 13204(a) specifically speaks to the possibility that potential class members may elect not to participate in a class.  Dkt. No. 90 at 7.

Indeed, the <u>Schwab</u> hearing panel recognized the important differences between the Customer Code and the Industry Code when it specifically referenced Judge Jones's decision compelling arbitration in this case (<u>see</u> Dkt. No. 95-1 at 18 n.58) and explained that Judge Jones's decision here "does not apply to [the] customer-industry disputes" at issue in <u>Schwab</u> because of the important differences between the rules of the *Customer* Code (applicable to *customer* agreements and disputes) at issue in <u>Schwab</u> and the rules of the Industry Code (applicable to employment agreements and disputes) at issue here:

> In <u>Cohen</u>, the District Court found that enforcement of an arbitration agreement waiving any right to proceed by class or collective action was not inconsistent with FINRA's Rules for intra-industry disputes. *Regardless of whether that conclusion is correct, it does not apply to customer-industry disputes, where the industry has long understood that judicial class actions were not merely permitted but were intended to be preserved as a customer option.*

<u>Id</u>. (emphasis added.)[20]

Third, Plaintiffs admit that the FINRA hearing panel has no special competence or experience with interpreting the statute central to this case – the FAA – and whether it requires enforcement of Plaintiffs' arbitration agreements.  <u>See</u> Dkt. No. 94 at 15 n.28. As the <u>Schwab</u> hearing panel has no special competence or experience in interpreting the FAA, its conclusions are irrelevant to this case and not entitled to any deference.[21]  <u>Id.</u>

Fourth, the <u>Schwab</u> hearing panel's decision is neither controlling authority nor entitled to any judicial deference beyond its power to persuade.  It is a decision issued by a single hearing panel in a disciplinary hearing, based only upon the evidence and

---

[20] Thus, the <u>Schwab</u> hearing panel expressly referenced Judge Jones's decision in this case but did not opine on "whether that conclusion is correct."  This is yet one more reason why Plaintiffs' contention that the <u>Schwab</u> decision is controlling and entitled to deference here is without merit.  And even if this Court should feel inclined to defer to the <u>Schwab</u> hearing panel's construction of FINRA rules – which it should not – surely it would also have to defer to that hearing panel's own conclusion distinguishing the Customer Code from the Industry Code.

[21] And in any case, the <u>Schwab</u> hearing panel's ultimate conclusion – that FINRA's rules are unenforceable under the FAA insofar as they seek to bar class action waivers – is correct.

arguments presented in that hearing (to which UBS was not a party).  Courts in the

Second Circuit and elsewhere agree that FINRA and its predecessor, the NASD, are *not*

"state actors" and that their interpretations of their rules are *not* "due the deference

accorded to [governmental] agency interpretations."  See, e.g., Perpetual Secs., Inc. v.

Tang, 290 F.3d 132, 137 (2d Cir. 2002) ("[t]he NASD is a private actor, not a state

actor") (quoting Desiderio v. N.A.S.D., 191 F.3d 198, 206 (2d Cir. 1991)); Morgan

Keegan & Co., Inc. v. Johnson, 2011 WL 7789796, at *7 (E.D. Va. Dec. 22, 2011)

("FINRA is a non-governmental agency and has no specific grant of authority from

Congress … FINRA's interpretation of [its rules] ... is not due the deference accorded to

agency interpretations ..."); Morgan Keegan & Co., Inc. v. Drzayick, 2011 WL 5403031,

at *2 n.1 (D. Idaho Nov. 8, 2011) (FINRA's denial of member's motion to declare certain

claims non-arbitrable "is not binding precedent on this Court and such decision need not

be given deference by this Court").[22]  And in any event, given the Schwab panel's

ultimate finding (that the FINRA rules at issue in that disciplinary proceeding were

unenforceable), their intermediate conclusion that the waiver violated FINRA rules is

nothing more than "dicta and not entitled to deference.  United States v. Wade, 152 F.3d

969, 973 (D.C. Cir. 1998); see also United States v. Westlands Water Dist., 134 F. Supp.

2d 1111, 1133 (E.D. Cal. 2001) (collecting cases).

 Finally, the Schwab hearing panel decision is not a final decision, as it has been

appealed to FINRA's National Adjudicatory Council (NAC).[23]  Only after the NAC's

---

[22] Even the courts in the cases cited by Plaintiffs declined to afford any deference to FINRA opinions about FINRA rules.  See Velez, 769 F. Supp. 2d at 447 (FINRA "staff opinion letters are not the sort of agency interpretation that is entitled to deference by this Court") (citing Gomez, 2010 WL 4455827, at *1).

[23] See Declaration of Andrew J. Schaffran, ¶2, Ex. A.  See FINRA Rule 9268(e) ("If not timely appealed . . . the [hearing panel] decision shall constitute final disciplinary action of FINRA . . . ."); see also FINRA Rule 9311 (stating procedure for party to appeal to NAC) & 9312 (stating procedure for appellate review initiated by NAC).

decision – and any possible review thereof by FINRA's Board of Governors – will FINRA have taken its "final action" in the Schwab matter.[24]  Because the Schwab hearing panel's decision is not FINRA's "final action" in that disciplinary proceeding, it warrants no deference by this Court (and is most certainly not a change in controlling law).  See, e.g., Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dept. of Environmental Protection, 208 F.3d 1, 6 (1st Cir. 2000) (opinion letter that "is not final agency action … does not command any particular deference").

In addition, even after FINRA takes its "final action" in the Schwab disciplinary proceeding, its decision will be subject to appeal and further review by the SEC and then the Court of Appeals.[25]  Importantly, neither the SEC nor the Court of Appeals will grant any deference to the hearing panel's decision in that disciplinary proceeding.[26]

### E.   UBS's Membership With FINRA Does Not Constitute A Separate Arbitration Agreement And Is In Any Event Irrelevant.

Perhaps recognizing that the FAA mandates enforcement of Plaintiffs' arbitration agreements with UBS and trumps enforcement of any allegedly contradictory FINRA Rule,

---

[24] See http://www.finra.org/Industry/Enforcement/Adjudication.  See also FINRA Rule 9349(c) (NAC decision becomes final only if there is no further review by the FINRA Board pursuant to FINRA Rule 9351(e)).

[25] See 15 U.S.C. § 78s(d)(2) (setting forth SEC oversight of self-regulatory organization—including FINRA—disciplinary decisions); 15 U.S.C. § 78y(a)(1) (setting forth Article III court review of final SEC orders).

[26] Judicial deference is due to a *governmental* agency where there is an express Congressional authorization to engage in rulemaking or adjudication process.  See, e.g., Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984); United States v. Mead Corp., 533 U.S. 218 (2001).  FINRA, however, is not a governmental agency – it is a private corporation.  See Desiderio v. NASD, Inc., 191 F.3d 198, 206 (2d Cir. 1999) (stating that FINRA's predecessor organization, NASD, "is a private actor, not a state actor"), cert. denied, 531 U.S. 1069 (2001); see also FINRA Certificate of Incorporation and By-Laws (both available at http://finra.complinet.com/).  Although FINRA is registered with the SEC as a self-regulatory organization pursuant to 15 U.S.C. § 78o-3(a), it was not created by statute.  Desiderio, 191 F.3d at 206.  None of its directors, executives, employees, or hearing officers are governmental officials or appointees, and it receives no funding from the federal government.  Id.  Research has disclosed no court decisions in which any court has ever extended any judicial deference to a decision by a FINRA disciplinary hearing panel.  Indeed, even the SEC grants zero deference to decisions by FINRA disciplinary hearing panels and, instead, conducts an independent and de novo review of FINRA's disciplinary actions.  See, e.g., Sorrell v. SEC, 679 F.2d 1323, 1326 n.2 (9th Cir. 1982) (SEC engages in "independent" and "de novo" "review of NASD decisions"); Todd & Co. v. SEC, 557 F.2d 1008, 1012-13 (3d Cir. 1977) (SEC conducts "full review" of NASD "disciplinary actions" and "must base its decision on its own findings").

Plaintiffs present a novel argument based on UBS's membership with FINRA, which Plaintiffs claim constitutes an "arbitration agreement" between UBS and FINRA.  See Dkt. No. 94 at 18-20.  As a threshold matter, Plaintiffs have waived this argument – like their Section 29(a) argument – because they failed to raise or pursue it before Judge Jones in opposition to UBS's motion to compel arbitration.  See supra at 14.  Plaintiffs cannot claim this argument only became available after the Schwab hearing panel decision – indeed, they do not even cite to the Schwab decision in that section of their brief.  See Dkt. No. 94 at 18-20.  In addition, neither FINRA's membership agreement nor any supposed arbitration agreement between FINRA and UBS is part of the record in this case, and neither was ever referenced let alone relied upon by Plaintiffs in their opposition to UBS's motion to compel arbitration.

Moreover, FINRA's membership agreement and any supposed arbitration agreement between FINRA and UBS is irrelevant here since the basis for UBS's motion to compel arbitration and for Judge Jones's order compelling arbitration was Plaintiffs' arbitration agreements with UBS (which were filed with the Court in support of the motion (see Dkt. Nos. 63 at ¶¶ 2-20 & Exs. 1-21 and 64 at 3-6, 8 & nn.8-9), not FINRA's membership agreement or any supposed arbitration agreement between FINRA and UBS.

Finally, Plaintiffs' reliance on UBS v. West Virginia Univ. Hospital, 660 F.3d 643 (2d Cir. 2011), is misplaced.  First, unlike this case, West Virginia Univ. Hospital involved an action brought by UBS in an unsuccessful effort to enjoin arbitration of a *customer* dispute before FINRA,[27] while in this case UBS successfully moved to compel arbitration of an employment

---

[27] This is yet another example of Plaintiffs seeking to rely upon cases involving the *Customer* Code in this case involving an employment dispute.  FINRA Rule 12200, at issue in West Virginia Univ. Hospital, provides that arbitration is mandatory under the *Customer* Code if, *inter alia*, "requested by the *customer*."  "[I]f the rules of an exchange … require arbitration of *customer* disputes, a broker's membership obligation confers upon the *customer* an option to arbitrate as the exchange rules provide."  West Virginia Univ. Hospital, 660 F.3d at 648-50 (Emphasis added.)  The analogous Industry Code provision, FINRA Rule 13200, does not include this language.

dispute.[28]  Indeed, in <u>West Virginia Univ. Hospital</u>, the Second Circuit ruled that the parties' dispute must be resolved in arbitration, which is precisely what Judge Jones ruled here.  <u>West Virginia Univ. Hospital</u> is also inapposite because, unlike this case, the parties there did not have a separate arbitration agreement that provided a basis for an order compelling arbitration. Indeed, the parties in <u>West Virginia Univ. Hospital</u> had no agreement of any kind that referenced arbitration or the FINRA Code.  660 F.3d at 647 ("none of [the parties' agreements] contains an arbitration clause or refers to the FINRA Code").

## III.   <u>CONCLUSION</u>

Based on the arguments and authorities set forth above, it is respectfully submitted that this Court should reject Plaintiffs' clearly unreasonable and vexatious effort to multiply the proceedings by seeking to re-litigate the same issues already decided by Judge Jones in this case, deny Plaintiffs' Motion, and enforce Judge Jones's Order compelling arbitration as the law of this case.

Dated:   August 7, 2013
        New York, New York

MORGAN, LEWIS & BOCKIUS LLP

By: /s/ Andrew J. Schaffran

    Andrew J. Schaffran
    Sam S. Shaulson
101 Park Avenue
New York, New York 10178
212-309-6000 (tel)
212-309-6001 (fax)
aschaffran@morganlewis.com
sshaulson@morganlewis.com

*Counsel for Defendants*

---

[28] Plaintiffs cite <u>West Virginia Univ. Hospital</u> as supposedly supporting the proposition that "arbitration agreements are contracts that must be *carefully interpreted* according to their terms."  Dkt. No. at 18-19 (Emphasis added.) What the court actually said was that "The [FAA] 'requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms."  660 F.3d at 649.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 7, 2013, Defendants' Memorandum in Opposition to

Plaintiffs' Motion for Relief from the Court's Order Granting Defendants' Motion to Compel

Arbitration, together with the Declaration of Andrew J. Schaffran (and Exhibit A thereto), was

filed electronically via Electronic Case Filing and served by first-class U.S. mail, postage pre-

paid upon the following:

> Jeffrey G. Smith, Esq.
> Robert Abrams, Esq.
> Matthew M. Guiney, Esq.
> Wolf Haldenstein Adler Freeman & Herz LLP
> 270 Madison Ave.
> New York, New York 10016
>
> *Counsel for Plaintiffs*

> By: /s/  Andrew J. Schaffran
>       Andrew J. Schaffran